### JOHN REILLY *v.* JAMES R. SMITH, CLAIMS COMMISSIONER
### (AC 24217)

Lavery, C. J., and Dranginis and McLachlan, Js.

Argued June 8—officially released September 7, 2004

*Richard W. Callahan,* for the appellant (plaintiff).

*Joseph Rubin,* associate attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Eliot D. Prescott* and *Maureen D. Regula,* former assistant attorneys general, for the appellee (defendant).

*Opinion*

DRANGINIS, J. The dispositive issue in this appeal is whether the trial court lacked subject matter jurisdiction to review a decision the claims commissioner (commissioner) made pursuant to General Statutes § 4-148 dismissing a claim as untimely.[1] We conclude that the

___

[1] General Statutes § 4-148 provides in relevant part: "(a) Except as provided in subsection (b) of this section, no claim shall be presented under this chapter but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of.

"(b) The General Assembly may, by special act, authorize a person to

court lacked subject matter jurisdiction to hear claims of this type and therefore affirm the judgment of the trial court.[2]

Although the complete factual basis underlying the plaintiff's claim can be found in *State* v. *Reilly*, 60 Conn. App. 716, 760 A.2d 1001 (2000), only the following facts and procedural history are relevant to our disposition of this appeal. On April 12, 1995, following a period of incarceration, the plaintiff, John Reilly, was released from custody, and his five year probation commenced. Three years into his probation, in late 1998, the plaintiff was arrested for violating a condition of his probation. The court held a hearing on that violation, which concluded on September 15, 1999. The court revoked the plaintiff's probation and sentenced him to serve fourteen months. The plaintiff appealed from the judgment, and this court reversed the judgment of the probation violation. Id., 736. This court concluded that the state had violated the plaintiff's rights to due process by prosecuting him and revoking his probation because he was never notified that his actions would result in a violation of a probation condition. Id., 735–36. This court's opinion was released on November 14, 2000, and the state failed to file with our Supreme Court a petition for certification to appeal.

On November 7, 2001, the plaintiff filed a notice of claim with the defendant commissioner seeking dam-

present a claim to the Claims Commissioner after the time limitations set forth in subsection (a) of this section have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose. Such finding shall not be subject to review by the Superior Court. . . ."

[2] On appeal, the plaintiff claims that (1) the commissioner improperly concluded that his claim was untimely and (2) the court improperly dismissed his application for a writ of mandamus because the commissioner has a statutory obligation to hear timely claims. Because we conclude that the trial court lacked subject matter jurisdiction to review decisions of the claims commissioner, we do not address these issues.

ages or, in the alternative, permission to sue the state for his wrongful prosecution and incarceration. The commissioner noted receipt of the claim on November 16, 2001. On April 5, 2002, the state filed with the commissioner a position statement requesting that the commissioner dismiss the plaintiff's claim as untimely because it was presented more than one year after the plaintiff sustained the injury or, in the exercise of reasonable care, should have discovered the injury. The state stressed that the date of injury should be considered the date the plaintiff's probation was revoked. The plaintiff challenged the state's position and argued instead that the date this court's decision became final should be considered the date of injury because until that time, the plaintiff did not have a clear legal claim of injury.

On May 24, 2002, the commissioner issued a memorandum of decision in which he concluded that the plaintiff sustained his injury when his probation was revoked in September, 1999. The commissioner determined that the plaintiff's claim was barred by the statute of limitations, § 4-148 (a), and that the commissioner lacked subject matter jurisdiction to hear the claim. Accordingly, the commissioner dismissed the plaintiff's claim.

The plaintiff filed an application for a writ of mandamus with the court on July 23, 2002, requesting that the court order the commissioner to accept, hear, consider and decide his claim. The plaintiff argued that the commissioner improperly concluded that his claim was barred by the statute of limitations. In response, the state claimed that decisions of the commissioner are not appropriate subjects for judicial review because they directly implicate the legislative waiver of sovereign immunity. The court dismissed the plaintiff's application for a writ of mandamus after concluding that it lacked subject matter jurisdiction to hear an appeal

from the commissioner's decision. This appeal followed.

I

The court determined that it lacked subject matter jurisdiction to review the commissioner's interpretation and application of the statute of limitation provision pertaining solely to claims that may be brought before him so that claimants may seek permission to sue the state. The commissioner's interpretation of this statute of limitations provision necessarily implicates sovereign immunity, for it serves as a threshold bar to the deliberate waiver of that immunity by the commissioner. Our resolution of this appeal, therefore, requires us to review briefly the doctrine of sovereign immunity as applied in this state and its implications on our construction of legislation that permits the waiver of that immunity.[3] First, however, we set forth the appropriate standard of review.

"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction"; (internal quotation marks omitted) *Miller* v. *Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003); and therefore serves as a basis for dismissal. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) Id.

Sovereign immunity "protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable. . . . [That a] sovereign is exempt from suit . . . [is not based on]

---

[3] See *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 78–80, 818 A.2d 758 (2003), for a more in-depth discussion of the history of sovereign immunity in this state.

any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends. . . . The modern rationale for the doctrine, however, rests on the more practical ground that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. J. Block, Suits Against Government Officers and the Sovereign Immunity Doctrine, 59 Harv. L. Rev. 1060, 1061 (1946)." (Citations omitted; internal quotation marks omitted.) *Shay* v. *Rossi*, 253 Conn. 134, 165–66, 749 A.2d 1147 (2000), overruled in part on other grounds, *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003).

"In its pristine form the doctrine of sovereign immunity would exempt the state from suit entirely, because the sovereign could not be sued in its own courts and there can be no legal right as against the authority that makes the law on which the right depends. . . . This absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decisions in others." (Citations omitted; internal quotation marks omitted.) Id., 168. "It is the established law of our state that the state is immune from suit unless the state, by appropriate legislation, consents to be sued." *Baker* v. *Ives*, 162 Conn. 295, 298, 294 A.2d 290 (1972).

"[P]rior to 1959, before the legislature created the office of the claims commission, the General Assembly in the first instance considered what action, if any, was appropriate on claims made against the state." *Chotkowski* v. *State*, 240 Conn. 246, 271, 690 A.2d 368 (1997) (*Berdon, J.*, concurring and dissenting). "It reached a point where the number of claims submitted to the legislature became a major burden and this interfered with the more important function of enacting general legislation. . . . [The] director [of the claims commis-

sion] explained [that the commission was created] to ensure that 'equity and justice' [would be] done. A statutory procedure for the disposition of claims against the state, to be administered by a claims commission, was adopted by the enactment of Public Acts 1959, No. 685. Subsequently, in 1975, the legislature substituted a claims commissioner . . . for the claims commission. See Public Acts 1975, No. 75-605. Therefore, the commissioner is in reality the conscience of the state, assuming in part the prior role of the legislature to ensure that justice and equity is done. It is the commissioner who now determines what claims should be paid, what claims should be referred to the legislature for payment, or which claimants should be authorized to institute an action against the state." *Chotkowski* v. *State*, supra, 272–74.

II

The legislative scheme by which the commissioner reviews possible claims against the state is contained in General Statutes §§ 4-141 to 4-164a, inclusive. The statute of limitations provision of that scheme, which is set forth in § 4-148, provides that claimants must file notice of their claims with the commissioner within one year of the claim's accrual; otherwise, such claims are barred unless the General Assembly, through a special act, authorizes the claimant to present the claim to the commissioner.[4]

Here, the plaintiff presented his claim to the commissioner within one year of this court's decision in *State* v. *Reilly*, supra, 60 Conn. App. 716, but more than two years from the time he sustained the injury of which he complains. The commissioner determined that the plaintiff's claim accrued in 1999, at the time his probation was revoked, and therefore concluded that the plaintiff's claim was barred by the statute of limitations.

[4] See footnote 1.

In the plaintiff's application for a writ of mandamus, he prayed that the court order the commissioner to hear his claim because the commissioner has a statutory duty to hear timely claims. Such an order required the court first to review the commissioner's conclusion that the plaintiff's claim was untimely and to determine that the commissioner's conclusion was improper. The court properly concluded that it lacked the jurisdiction to review the commissioner's decision.

When reviewing claims presented to him, the commissioner necessarily serves a purely legislative function, for "[t]he question whether the principles of governmental immunity from suit and liability are waived is a matter [solely] for legislative . . . determination." (Internal quotation marks omitted.) *Cooper* v. *Del Chi Housing Corp. of Connecticut*, 41 Conn. App. 61, 64, 674 A.2d 858 (1996). Accordingly, General Statutes § 4-164 (b) provides: "The action of the Claims Commissioner in approving or rejecting payment of any claim or part thereof shall be final and conclusive on *all questions of law and fact* and shall not be subject to review except by the General Assembly." (Emphasis added.)

Here, the commissioner determined that, as a matter of law, the plaintiff reasonably should have discovered his injury at the time his probation was revoked in September, 1999. See *Lombard* v. *Edward J. Peters, Jr., P.C.*, 79 Conn. App. 290, 294, 830 A.2d 346 (2003) (" 'whether a party's claim is barred by the statute of limitations is a question of law' "). Regardless of whether we would come to a different conclusion, we are not in the position to second-guess the commissioner on this point. In fact, we are prohibited from doing so. See *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 541, 489 A.2d 363 (1985) ("commissioner

of claims performs a legislative function directly review-able only by the General Assembly").[5]

The plaintiff cites *Lagassey* v. *State*, 268 Conn. 723, 846 A.2d 831 (2004), and *Merly* v. *State*, 211 Conn. 199, 558 A.2d 977 (1989), for the proposition that we have the judicial authority to review the commissioner's interpretation of the statute of limitations. This argument fails to differentiate between our authority to review legal issues when they are before the court and our inability to review direct appeals from the commissioner's decisions. Both *Lagassey* and *Merly* concerned claims brought pursuant to special acts passed by the legislature. Because the legislature had permitted the plaintiffs in those cases to sue, the courts had jurisdiction to hear the claims presented by both sides and to inquire into conclusions of law and fact on which those claims were based. Hence, in both *Merly* and *Lagassey*, because the plaintiffs were before the court pursuant to legislative waivers of sovereign immunity, the court had the jurisdiction to review the commissioner's decisions regarding the timeliness of the claims. Here, the plaintiff was not before the trial court pursuant to any waiver of sovereign immunity, and, as such, the court had no jurisdiction to review his claims and properly dismissed the application for a writ of mandamus.

The judgment is affirmed.

In this opinion the other judges concurred.

[5] As indicated in *Circle Lanes of Fairfield, Inc.* v. *Fay*, supra, 195 Conn. 534, "the proceedings of a legislative commission may come within the jurisdiction of a court acting under the judicial power of article fifth of the [state] constitution . . . if . . . egregious and otherwise irreparable violations of state or federal constitutional guarantees are being or have been committed by such proceedings." (Internal quotation marks omitted.) Id., 542–43. Such a situation, however, is not present here.