FERGUSON MECHANICAL COMPANY, INC. *v.*
DEPARTMENT OF PUBLIC WORKS
(SC 17685)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued March 6—officially released June 26, 2007

*Lawrence G. Rosenthal,* with whom was *Marci J. Silverman* for the appellant (plaintiff).

*Drew S. Graham,* assistant attorney general, with whom were *George E. Finlayson,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Opinion*

NORCOTT, J. The principal issue in this appeal is whether a subcontractor that was listed in a general contractor's successful bid for a government building project may seek judicial review of its subsequent substitution in an awarded bid. The plaintiff subcontractor, Ferguson Mechanical Company, Inc., appeals[1] from the judgment of dismissal by the trial court rendered in favor of the defendant, the state department of public works (department), on the ground that the court lacked subject matter jurisdiction over the action because the plaintiff had no standing to bring an appeal under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On May 4, 2005, the department opened and solicited competitive bids for construction work on the science center and classroom building at Eastern Connecticut State University. The plaintiff, a mechanical contractor licensed by the state of Connecticut, supplied subcontract bids to several general contractors that were submitting bids for the project in the amount of $12.2 million for the mechanical and heating, ventilation and air conditioning (HVAC) portion of the project. The responsible low bidder, O and G Industries, Inc. (O & G), listed the plaintiff as its HVAC subcontrac-

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

tor.[2] On July 12, 2005, the department presented O & G with a contract for the project and requested that O & G submit executed subcontract agreements for each of the listed subcontracts in its bid proposal, pursuant to the requirements of General Statutes § 4b-96.[3] Three days later, O & G submitted a subcontract proposal to the plaintiff that included the statutorily mandated form plus four riders defining the scope and terms of the work to be completed.

The plaintiff objected to rider A, which required that (1) the plaintiff obtain surety bonds for the payment and performance of the work, provided that O & G would pay the plaintiff up to 1.8 percent of the total value of the subcontract for the cost of the bonds, and (2) the value of the bond would be determined by the invoice from the bonding company to the plaintiff's insurance broker, rather than by the invoice from the plaintiff's insurance broker to the plaintiff. The plaintiff and O & G negotiated the terms of the subcontract over the course of several weeks, and as of August 11, 2005,

---

[2] General Statutes § 4b-95 (b) and schedule 7.5.1 of the bid proposal form used by the department mandate that each general contractor submitting a bid also provide a "listing [of] the names and prices of subcontractors for the [masonry, electrical, heating, ventilating and air conditioning, and mechanical work other than heating, ventilating and air conditioning] . . . ." Therefore, the plaintiff was a "listed subcontractor" in O & G's successful bid.

[3] General Statutes § 4b-96 provides in relevant part: "Within five days after being notified of the award of a general contract by the awarding authority, or, in the case of an approval of a substitute subcontractor by the awarding authority, within five days after being notified of such approval, the general bidder shall present to each listed or substitute subcontractor (1) a subcontract in the form set forth in this section and (2) a notice of the time limit under this section for executing a subcontract. If a listed subcontractor fails within five days, Saturdays, Sundays and legal holidays excluded, after presentation of a subcontract by the general bidder selected as a general contractor, to perform his agreement to execute a subcontract in the form hereinafter set forth with such general bidder, contingent upon the execution of the general contract, the general contractor shall select another subcontractor, with the approval of the awarding authority. . . ."

they had reached an agreement on the terms of the subcontract with the exception of O & G's requirement that the plaintiff submit the cost of the performance and payment bonds via invoice from the bonding company to the plaintiff's insurance broker. The plaintiff refused to provide the documentation, claiming that the requested document was not under its control because its insurance broker had refused to provide the invoice. On August 11, 2005, O & G sent to the department a request to substitute another subcontractor for the plaintiff for "good cause," pursuant to General Statutes § 4b-95 (c),[4] due to the plaintiff's refusal to sign the subcontract. The plaintiff received no notice of O & G's request until August 17, 2005, when the department authorized the substitution.

On August 24, 2005, the plaintiff filed a petition with the department, pursuant to the regulations adopted under General Statutes § 4b-100 (b),[5] protesting the department's action. On September 29, 2005, the department held an informal conference, at which the plaintiff and O & G outlined their positions regarding the alleged violation of the competitive bidding statutes, specifi-

---

[4] General Statutes § 4b-95 (c) provides in relevant part: "The awarding authority shall not permit substitution of a subcontractor for one named in accordance with the provisions of this section . . . except for good cause. The term 'good cause' includes but is not limited to a subcontractor's . . . (1) Death or physical disability, if the listed subcontractor is an individual; (2) dissolution, if a corporation or partnership; (3) bankruptcy; (4) inability to furnish any performance and payment bond shown on the bid form; (5) inability to obtain, or loss of, a license necessary for the performance of the particular category of work; (6) failure or inability to comply with a requirement of law applicable to contractors, subcontractors, or construction, alteration, or repair projects; (7) failure to perform his agreement to execute a subcontract under section 4b-96."

[5] General Statutes § 4b-100 (b) provides: "The Commissioner of Public Works shall adopt regulations, in accordance with the provisions of chapter 54, establishing a procedure for promptly hearing and ruling on claims alleging a violation or violations of sections 4b-91 to 4b-100, inclusive. Such claims may be initiated by the Department of Public Works or any party whose financial interests may be affected by the decision on such a claim."

cally §§ 4b-95 and 4b-96. The presiding officer at the conference denied the plaintiff's bid protest petition in a ruling dated October 25, 2005, and three days later, the plaintiff filed a written appeal from that ruling with James T. Fleming, the department's commissioner (commissioner). The commissioner upheld the decision of the presiding officer and denied the plaintiff's appeal on November 21, 2005.

On December 6, 2005, the plaintiff appealed from the commissioner's decision to the trial court, pursuant to General Statutes § 4-183. The plaintiff also filed applications for a stay and for a temporary injunction to enjoin the department from allowing the substitution of another subcontractor for the plaintiff. The department filed a motion to dismiss the complaint and applications for lack of subject matter jurisdiction. In its motion to dismiss, the department claimed that the trial court lacked subject matter jurisdiction over the plaintiff's claim because: "(1) the [s]tate is immune from suit under the doctrine of sovereign immunity; (2) a subcontractor has no standing to challenge the [s]tate's approval of [O & G's] request for subcontractor substitution; and (3) the [department's] action is not a 'final decision in a contested case' and therefore the [p]laintiff does not have standing to pursue its claim under the UAPA." The trial court granted the motion to dismiss the administrative appeal, after finding that the plaintiff was not an aggrieved person authorized to bring an appeal under the UAPA, and rendered judgment accordingly. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly dismissed the appeal because it failed to distinguish the plaintiff's status as a listed, successful bidder from that of a disappointed, unsuccessful bidder,

which would have no standing to bring an appeal.[6] Specifically, the plaintiff argues that its status as a listed subcontractor in a successful bid imparts upon it a statutory entitlement akin to a property interest, which means that it has suffered an injury that makes it classically aggrieved. The department argues in response that (1) the plaintiff, as a listed subcontractor, has no more standing to challenge public bid awards than a disappointed bidder, (2) the plaintiff is not aggrieved by an agency's final decision, so the trial court lacked jurisdiction to hear its appeal, and (3) the plaintiff's claim is barred by the doctrine of sovereign immunity. We agree with the department's second argument, namely, that the plaintiff was not aggrieved because of the lack of a final decision, and we, therefore, affirm the judgment of the trial court.[7]

We begin our analysis with the subject matter jurisdiction claim and the applicable standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any

[6] Both parties agree that unsuccessful bidders have no standing to challenge the award of a state contract in the absence of allegations of "fraud, corruption or acts undermining the objective and integrity of the bidding process . . . ." (Internal quotation marks omitted.) *Connecticut Associated Builders & Contractors* v. *Hartford,* 251 Conn. 169, 179, 740 A.2d 813 (1999); see also *Unisys Corp.* v. *Dept. of Labor,* 220 Conn. 689, 693–95, 600 A.2d 1019 (1991); *Ardmare Construction Co.* v. *Freedman,* 191 Conn. 497, 502–503, 467 A.2d 674 (1983). In *Connecticut Associated Builders & Contractors* v. *Hartford,* supra, 182–84, this court specifically held that subcontractors that submitted unsuccessful bids have no standing to challenge the bidding process because they have no legal stake in the process.

[7] The trial court's memorandum of decision focused on its determination that the plaintiff was not aggrieved because listed subcontractors have no standing to bring an appeal under the UAPA. We agree that the plaintiff is not an aggrieved person authorized to bring an appeal under the UAPA, but we reach our conclusion based on the lack of a final decision by the department.

time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Citation omitted; internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). "There is no absolute right of appeal to the courts from a decision of an administrative agency. . . . The UAPA grants the Superior Court jurisdiction over appeals of agency decisions only in certain limited and well delineated circumstances. . . . Judicial review of an administrative decision is governed by . . . § 4-183 (a) of the UAPA, which provides that [a] person who has exhausted all administrative remedies . . . and who is aggrieved by a final decision may appeal to the superior court . . . . A final decision is defined in § 4-166 (3) (A) as the agency determination in a contested case . . . ." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 699–700, 620 A.2d 780 (1993).

A contested case is defined in § 4-166 (2) as "a proceeding . . . in which the legal rights, duties or privileges of a party are *required by state statute or regulation* to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ."[8] (Emphasis added.) "Not every matter or

---

[8] In 2004, the legislature amended the statutory definition of a contested case in § 4-166 (2) to its current form by adding the phrase "or regulation . . . ." Public Acts 2004, No. 04-94, § 1; see also *Francis* v. *Chevair*, 99 Conn. App. 789, 793 n.5, 916 A.2d 86, cert. denied, 283 Conn. 901, 926 A.2d 669 (2007). The new definition became effective on October 1, 2004, and therefore was in effect when the plaintiff submitted its bid to O & G.

Prior to the legislature's amendment, our case law had established that an agency regulation requiring a hearing could not satisfy the requirements for contested case status; the hearing must have been required by statute. See *Morel* v. *Commissioner of Public Health*, 262 Conn. 222, 234, 811 A.2d 1256 (2002) ("[b]y now it is well established that one requirement for a final decision in a contested case, upon which the jurisdiction of the trial court rests in a UAPA appeal, is that any hearing held be required by statute, not merely by agency rule, regulation or policy").

issue determined by an agency qualifies for contested case status. . . . [W]e have determined that even in a case where a hearing is in fact held, in order to constitute a contested case, a party to that hearing must have enjoyed a statutory [or regulatory] right to have his legal rights, duties or privileges determined by that agency holding the hearing. . . . In the instance where no party to a hearing enjoys such a right, the Superior Court is without jurisdiction over any appeal from that agency's determination." (Citation omitted; internal quotation marks omitted.) *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 700.

"A party seeking review of a state agency's action, therefore, must establish more than aggrievement (injury in fact); he must establish that the injury resulted from a final decision in a contested case." *Ardmare Construction Co.* v. *Freedman*, 191 Conn. 497, 503, 467 A.2d 674 (1983). Our courts have had ample opportunity to construe the definition of "contested case."[9] "The test for determining contested case status has been well established and requires an inquiry into three criteria, to wit: (1) whether a legal right, duty or privilege is at issue, (2) and is statutorily [or regulatorily] required to be determined by the agency, (3) through an opportunity for hearing or in which a hearing is in fact held." *Herman* v. *Division of Special Revenue*, 193 Conn. 379, 382, 477 A.2d 119 (1984).

---

[9] See, e.g., *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 799–800, 629 A.2d 367 (1993) (denial of certification that proposed project complied with water quality standards not contested case); *Ardmare Construction Co.* v. *Freedman*, supra, 191 Conn. 503–504 (agency decision to reject bid for public works project not contested case); *Rybinski* v. *State Employees' Retirement Commission*, 173 Conn. 462, 469–72, 378 A.2d 547 (1977) (commission meeting not hearing under UAPA); *Old Rock Road Corp.* v. *Commission on Special Revenue*, 173 Conn. 384, 387–88, 377 A.2d 1119 (1977) (provisional grant of racing license not final decision).

Even if we were to assume, for the purposes of this opinion, that the plaintiff had a legal right or privilege as a listed subcontractor on the winning bid, "the plaintiff still cannot prevail unless the [department was] *statutorily [or regulatorily] required to determine the plaintiff's legal right or privilege . . . in a hearing.*" (Emphasis added; internal quotation marks omitted.) *Peters* v. *Dept. of Social Services,* supra, 273 Conn. 443. "The statutory requirement that an appeal to the Superior Court may be taken only from a contested case as defined in § 4-166 (2) is an obvious indicator that the legislature did not intend to authorize a right of appeal to the Superior Court from every determination of an administrative agency." *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection,* 226 Conn. 792, 800, 629 A.2d 367 (1993). The dispositive question before us is, therefore, whether the department was required by statute or regulation to hold a hearing, as defined under the UAPA, in order to address the plaintiff's grievances.

"A hearing is generally defined as a [p]roceeding of relative formality . . . generally public, with definite issues of fact and of law to be tried, in which . . . parties proceeded against have [a] right to be heard. . . . In order for a proceeding to qualify as a hearing for the purposes of § 4-166 (2), the party must have a statutory or regulatory right to be heard by the agency." (Citation omitted; internal quotation marks omitted.) *Herman* v. *Division of Special Revenue,* supra, 193 Conn. 382–83; see also *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 471, 378 A.2d 547 (1977) (commission's decision concerning requested change of retirement plans not hearing where there was "no statutory requirement that 'an opportunity for hearing' be provided . . . [and] no hearing was 'in fact held' by the commission"); *East Hampton* v. *Dept. of Public Health,* 80 Conn. App. 248, 255, 834

A.2d 783 (2003) ("UAPA mandates, as a predicate for contested case status, that a party must have enjoyed a statutory right to a hearing" [internal quotation marks omitted]), cert. denied, 267 Conn. 915, 841 A.2d 221 (2004).

Section 4b-100 (b) requires that the commissioner "adopt regulations . . . *establishing a procedure* for promptly hearing and ruling on claims alleging a violation or violations of [the public bidding statutes]. Such claims may be initiated by the [department] or any party whose financial interests may be affected by the decision on such a claim." (Emphasis added.) Pursuant to § 4b-100, the commissioner adopted *"grievance procedures . . . for promptly hearing and ruling on claims* alleging a violation or violations of the contract bidding provisions . . . ." (Emphasis added.) Regs., Conn. State Agencies § 4b-100-1. The statement of purpose in the regulations provides: "In view of the fact that time is normally of the essence in awarding construction contracts . . . the grievance procedures are intended to be *quick, informal and conclusive* so as to avoid delays which can increase costs and jeopardize the very ability of the [s]tate to proceed with needed public works projects." (Emphasis added.) Id. In light of these considerations, the grievance procedures provide that an "informal conference" be held in order to allow the parties "an opportunity to argue their respective positions regarding the alleged violation(s)" of the public bidding statutes. Id., § 4b-100-6 (a). During the conference, the presiding officer designated by the commissioner reviews all documentation provided by both sides and listens to the parties present oral argument on their positions. See id., §§ 4b-100-7 and 4b-100-8. The presiding officer is required to issue a written ruling after the conclusion of the conference, and a party adversely affected by that ruling may file an appeal with the commissioner. See id., §§ 4b-100-9 and 4b-100-

10. The commissioner then is required to issue a written decision on the ruling, which "shall be final and conclusive in the matter." Id., § 4b-100-10 (c).

Thus, neither the competitive bidding statutes nor the regulations promulgated by the department pursuant to § 4b-100 require the department to hold a hearing to address alleged violations of the bidding process for public building contracts. Section 4b-100 (b) requires only that the commissioner *establish a procedure* for the hearing of claims; it does not require that the department hold hearings. The regulations adopted pursuant to the statutory mandate accordingly label the claim resolution process as "grievance procedures" and require quick, informal and conclusive conferences rather than hearings. Regs., Conn. State Agencies § 4b-100-1. We note that the legislature has, elsewhere in our statutory scheme, expressly required that state agencies hold hearings. See, e.g., *Peters* v. *Dept. of Social Services*, supra, 273 Conn. 446–47 n.11 (listing seventeen statutes providing for hearings by state agencies).[10]

---

[10] "See also General Statutes § 17b-77 (providing hearings for persons 'aggrieved by' department decisions as to 'good cause' or 'best interests of the child' with respect to assistance applicants' failure to provide information about absentee parent); General Statutes § 17b-81 (c) (determination of contributions by legally liable relatives pursuant to General Statutes § 4a-12); General Statutes § 17b-99 (a) (revocation of vendor licenses and franchises); General Statutes § 17b-112 (g) ('[a]n applicant or recipient of temporary family assistance who is adversely affected by a decision of the Commissioner of Social Services may request and shall be provided a hearing'); General Statutes § 17b-241 (b) (rates of free-standing detoxification centers); General Statutes § 17b-242 (a) (rates of home health care agencies); General Statutes § 17b-271 (termination of agreements entered into pursuant to General Statutes § 17b-267 between department and fiscal intermediary agencies or organizations); General Statutes § 17b-275 (physician and pharmacy lock-in arrangements for medicaid recipients utilizing medical services or items at 'frequency or amount that is not medically necessary'); General Statutes § 17b-341 (regulation of rates of self-pay long-term care facilities); General Statutes § 17b-351 (b) (compensation for loss of constructed, but unlicensed nursing home beds); General Statutes § 17b-352 (e) (certificates of need for long-term care facilities); General Statutes § 17b-357 (d) (compliance with federal statutes governing long-term care facilities); General Statutes § 17b-358 (a) (denial of long-term care facility's application to terminate department's appointment of 'temporary manager' to oversee operations and com-

"The contrast between [the statute at issue] and those statutes is persuasive evidence of a lack of a similar legislative purpose to impose by statute a hearing requirement . . . ." (Internal quotation marks omitted.) Id., 446–47; see also *East Hampton* v. *Dept. of Public Health,* supra, 80 Conn. App. 255–56 ("Had the legislature intended . . . to require a hearing, it could have expressly done so. . . . The difference in the language used in [the statutes at issue] and in those statutes that expressly require a hearing is persuasive evidence of a lack of similar legislative intent to impose the same requirement." [Citations omitted; internal quotation marks omitted.]). Similarly, the legislature has, elsewhere in our statutory scheme, expressly provided for judicial review of agency decisions by calling the decision a "contested case"[11] or by referring to § 4-

pliance with federal law); General Statutes § 17b-496 (persons aggrieved by department decisions with respect to Connecticut Pharmaceutical Assistance Contract to the Elderly and the Disabled Program); General Statutes § 17b-526 (c) (department determinations with respect to financial feasibility of construction of continuing care facilities); General Statutes § 17b-749 (c) (7) and (8) (commissioner must provide administrative hearing and appeals process with respect to child care subsidy program); General Statutes § 17b-892 (revocation of community action agencies' designation to serve political subdivisions)." *Peters* v. *Dept. of Social Services,* supra, 273 Conn. 446–47 n.11.

[11] See, e.g., General Statutes § 5-155a (k) ("If any claim is denied, a claimant may request that the decision be reviewed and reconsidered by the commission. Thereafter, any such case shall be decided as a contested case in accordance with chapter 54."); General Statutes § 16-19ss (b) ("[u]pon issuing a determination pursuant to subsection [a] of this section, the department shall hold a contested case proceeding, in accordance with the provisions of chapter 54"); General Statutes § 17a-15 (e) ("[a]ny hearing held pursuant to a request made under subsection [c] or [d] of this section shall be conducted as a contested case in accordance with chapter 54"); General Statutes § 19a-79 (b) ("[t]he [c]ommissioner of [p]ublic [h]ealth may adopt regulations, pursuant to chapter 54, to establish civil penalties . . . and other disciplinary remedies that may be imposed, following a contested-case hearing"); General Statutes § 19a-181c (b) ("[a] hearing on a petition under this section shall be deemed to be a contested case and held in accordance with the provisions of chapter 54"); General Statutes § 45a-55 (b) ("If any claim is denied, a claimant may request that the decision be reviewed and reconsidered by the commission. Thereafter, any contested case shall be heard and decided in accordance with chapter 54.").

$183.^{12}$ The competitive bidding statutes contain no such provision.[13] Cf. General Statutes § 8-68f (2) (requiring housing authority to "adopt a procedure for hearing tenant complaints and grievances").

The legislature "has the primary and continuing role in deciding which class of proceedings should enjoy

---

[12] See, e.g., General Statutes § 1-82 (b) ("[t]he respondent, if aggrieved by the finding and memorandum, may appeal therefrom to the Superior Court in accordance with the provisions of section 4-183"); General Statutes § 1-206 (d) ("[a]ny party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183"); General Statutes § 3-71a ("[a]ny person aggrieved by a decision of the [s]tate [t]reasurer may appeal therefrom in accordance with the provisions of section 4-183"); General Statutes § 4a-100 (o) ("[a]ny applicant aggrieved by the commissioner's final determination concerning a preliminary determination, a denial of certification, a reduction in prequalification classification or aggregate work capacity rating or a revocation or nonrenewal of certification may appeal to the Superior Court in accordance with section 4-183"); General Statutes § 7-273d ("[t]he decision after hearing shall be final except that the applicant for such hearing, if aggrieved, may appeal therefrom in accordance with section 4-183"); General Statutes § 10-76h (d) (4) ("[a]ppeals from the decision of the hearing officer or board shall be taken in the manner set forth in section 4-183, except the court shall hear additional evidence at the request of a party"); General Statutes § 13b-413 ("[a]ny person aggrieved by any order, authorization or decision of the [c]ommissioner of [t]ransportation under the provisions of this chapter may appeal therefrom in accordance with the provisions of section 4-183"); General Statutes § 20-126r ("[a]ny licensee aggrieved by a final decision of the [d]epartment of [p]ublic [h]ealth in suspending or revoking any license under the provisions of sections 20-126h to 20-126w, inclusive, may appeal therefrom as provided in section 4-183"); General Statutes §§ 31-57c (c) and 31-57d (c) ("[t]he written decision shall be a final decision for the purposes of sections 4-180 and 4-183"). The express grant of judicial review is sometimes present when a party otherwise would have no right of appeal due to failure to meet the requirement of a statutorily mandated hearing. See *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 140 n.11, 788 A.2d 1158 (2002).

[13] We also note that in other areas of our statutory scheme, the legislature has expressly stated that an agency decision does *not* constitute a basis for appeal under the UAPA. See, e.g., General Statutes § 16-245f ("[a]ny hearing shall be conducted as a contested case in accordance with chapter 54, except that any hearing with respect to a financing order or other order to sustain funding for conservation and load management and renewable energy investment programs . . . shall not be a contested case, as defined in section 4-166"); General Statutes § 20-8a (j) ("[a] determination of good cause shall not be reviewable and shall not constitute a basis for appeal of the decision of the board pursuant to section 4-183"); General Statutes § 20-

the full panoply of procedural protections afforded by the UAPA to contested cases, including the right to appellate review by the judiciary. Deciding which class of cases qualifies for contested case status reflects an important matter of public policy and the primary responsibility for formulating public policy must remain with the legislature." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, supra, 273 Conn. 445. In the present case, the absence of judicial review is consistent with the purpose of the public bidding statutes, which is "promot[ing] the public interest in the efficient completion of public works projects." (Internal quotation marks omitted.) *Connecticut Associated Builders & Contractors* v. *Anson*, 251 Conn. 202, 214, 740 A.2d 804 (1999); see also *Connecticut Associated Builders & Contractors* v. *Hartford*, 251 Conn. 169, 180, 740 A.2d 813 (1999) ("Our policy to limit standing so as to deny some claims brought by unsuccessful and precluded bidders is designed to protect twin goals that serve the public interest in various, sometimes conflicting, ways. The standing rules aim 'to strike the proper balance between fulfilling the purposes of the competitive bidding statutes and preventing frequent litigation that might result in extensive delay in the commencement and completion of government projects to the detriment of the public.' ").

Accordingly, we conclude that, because the department was not under a statutory or regulatory mandate to conduct a hearing with respect to the plaintiff's allegations, there was no agency determination in a contested case. Thus, the plaintiff had no right to judicial

---

102a ("[s]uch presentation shall not constitute a hearing nor a contested case within the meaning of chapter 54"). We decline, however, to construe the absence of such explicit language as an implication that the legislature intended to provide for judicial review, because the right to such review from an administrative decision exists only under a grant of statutory authority. See *Rybinski* v. *State Employees' Retirement Commission*, supra, 173 Conn. 472.

review of the commissioner's decision because it was not aggrieved by a final decision required to trigger judicial review pursuant to the UAPA, and the trial court properly rendered judgment dismissing the plaintiff's administrative appeal for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion the other justices concurred.