STATE OF CONNECTICUT *v.* CHARLOTTE
HUNGERFORD HOSPITAL
(AC 32856)

Robinson, Espinosa and Peters, Js.

---

Argued November 28, 2011—officially released February 14, 2012

*Steven V. Manning*, with whom was *Donna R. Zito*, for the appellant (defendant).

*Jane R. Rosenberg*, assistant attorney general, with whom were *Lynn D. Wittenbrink*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the appellee (plaintiff).

*Opinion*

PETERS, J. General Statutes § 4-160 (a)[1] authorizes the claims commissioner to permit a civil suit otherwise barred by sovereign immunity "on any claim which, in the opinion of the Claims Commissioner, presents an issue of law or fact under which the state, were it a private person, could be liable." The principal issue in

[1] General Statutes § 4-160 (a) provides: "When the Claims Commissioner deems it just and equitable, the Claims Commissioner may authorize suit against the state on any claim which, in the opinion of the Claims Commissioner, presents an issue of law or fact under which the state, were it a private person, could be liable."

this appeal is whether the subpoena power conferred upon the claims commissioner by General Statutes § 4-151 (c) permits him to subpoena documents from a respondent that has not been named as a party to the suit that the claims commissioner has been asked to authorize. The respondent has appealed from the judgment of the trial court enforcing the claims commissioner's subpoena. We affirm the judgment of the court.

On May 7, 2010, the plaintiff, the state of Connecticut (state), filed an application in the Superior Court, pursuant to § 4-151 (c) and (e),[2] for the issuance of an order to force the defendant, Charlotte Hungerford Hospital (hospital), to comply with a subpoena duces tecum issued by the claims commissioner. The hospital filed an objection to the application. After hearing oral argument, the court granted the state's application and ordered the hospital to comply with the claims commissioner's subpoena. The hospital has appealed.[3]

The subpoena that is at issue in this appeal relates to a case currently pending before the claims commissioner, *Jodey Charette, Co-Administrator, Estate of Dayna Ashley Charette* v. *State of Connecticut, No. 21595* (Charette case). The claimant, Jodey Charette, seeks permission, pursuant to General Statutes § 4-147,[4]

---

[2] General Statutes § 4-151 provides in relevant part: "(c) The Claims Commissioner may . . . issue subpoenas . . . . (e) If any person refuses . . . to produce any relevant, unprivileged . . . record or document, the Claims Commissioner shall certify such fact to the Attorney General, who shall apply to the superior court for the judicial district in which such person resides for an order compelling compliance. . . ."

[3] The court's order was an appealable final judgment because the sole purpose of the judicial proceeding that was initiated by the state was to compel the hospital to produce the requested documents. The appeal thus falls within the first prong of the test of finality of judgment stated in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), because the order "terminates a separate and distinct proceeding . . . ."

[4] General Statutes § 4-147 provides in relevant part: "Any person wishing to present a claim against the state shall file with the Office of the Claims Commissioner a notice of claim, in duplicate, containing the following information: (1) The name and address of the claimant; the name and address

to sue the state for damages resulting from the death of Dayna Ashley Charette (decedent), who died while in the custody of the department of correction. The claimant alleges that the decedent was an inmate confined to York Correctional Institution (York) and that, on the day immediately prior to her death, Litchfield County judicial marshals transported her to Litchfield Superior Court for a court appearance. In response to her complaint that she was feeling unwell, the marshals transported the decedent to the hospital. At the hospital's emergency room, the decedent misrepresented her physical condition and prescription regimen to the attending physician and persuaded him to give her a large dose of methadone. The marshals thereafter returned the decedent to York. The next morning, she was found dead in her cell. A medical examiner concluded that the cause of her death was methadone toxicity and that the manner of her death was accidental. The state has denied liability in the Charette case. The hospital is not a party to this underlying litigation.[5]

The claims commissioner approved the state's request for the issuance of a subpoena ordering the hospital to produce documentation relating, inter alia, to its dispensing and administration of narcotic drugs.[6]

---

of his principal, if the claimant is acting in a representative capacity, and the name and address of his attorney, if the claimant is so represented; (2) a concise statement of the basis of the claim, including the date, time, place and circumstances of the act or event complained of; (3) a statement of the amount requested; and (4) a request for permission to sue the state, if such permission is sought. . . ."

[5] A civil suit seeking damages from the emergency room physician and the hospital has, however, been filed in New Britain Superior Court. *Charette* v. *Malone*, Superior Court, judicial district of New Britain, Docket No. CV-09-5014422.

[6] The subpoena issued by the claims commissioner sought: "1. Copies of all documents regarding the licensing of the Charlotte Hungerford Hospital pharmacy allowing the dispensing and administration of all narcotic drugs, including but not limited to Methadone, Suboxone and/or Buprenorphine; any and all policy and procedures with regard to the dispensing of Methadone, any and all emergency room procedures, directives, and policies regarding the dispensing or administration of Methadone including but not

The hospital declined to comply with the subpoena because, in its view, the requested documents were irrelevant and immaterial to the Charette case.

Pursuant to § 4-151 (c) and (e),[7] the state applied to the Superior Court for an order to compel the hospital's compliance with the claims commissioner's subpoena. The state argued that the hospital's compliance with the subpoena would assist the commissioner in his appraisal of the merits of the state's claim in the Charette case, that the prescription of methadone for the decedent by a physician on the hospital's staff was not foreseeable and therefore raised an issue of causation about the state's liability for the decedent's death.

Granting the state's request, the court rejected the hospital's arguments that (1) the claims commissioner has only limited statutory authority, which must be strictly construed, and therefore has no jurisdiction over the hospital, a nonparty to the underlying claims case, (2) the claims commissioner is not entitled to

limited to any limitations on dosage or dispensing of Methadone and manner of dispensing Methadone; and any and all documents pertaining to the qualifications required of the individual who administers the dosage and the diagnostic criteria which must be met before Methadone or any other narcotic may be dispensed. 2. Copies of any internal investigation or review reports, including but not limited to policy reviews or emergency room procedure reviews conducted by Charlotte Hungerford Hospital regarding the treatment provided to Dayna Ashley Charette on August 31, 2007. 3. Copies of any and all health records, reports, or documents of any kind or description, in your possession or that you have access, related in any way to Dayna Ashley Charette, DOB: 11/21/86, including but not limited to pharmacy records, physician's orders, clinical records, intake sheets, nurse's notes, doctor's notes, bills, lab reports, x-rays, test results, referrals to any other care provider or to any state or private agency of any kind. The term documents includes pictures, documents or graphics maintained electronically, in writing or otherwise."

The hospital initially also resisted compliance with a second subpoena seeking records relating to the hospital's treatment of the decedent but agreed subsequently to provide those records after it had received the necessary authorization from the claimant in the Charette lawsuit.

[7] See footnote 2 of this opinion.

production of the requested documents because they do not "relate" to the claims proceeding as required by § 4-160 (a) and (3) the claims act is an unconstitutional delegation of authority under article third of the state constitution.[8] The hospital has renewed each of these arguments in this appeal. We are not persuaded of the merits of the hospital's arguments for reversal of the court's well reasoned judgment in favor of the state.

I

AUTHORITY OF THE CLAIMS COMMISSIONER

The centerpiece of the hospital's appeal is its contention that, as is true with statutes conferring adjudicative authority upon other administrative agencies, the statutes conferring investigatory authority upon the claims commissioner must be strictly construed. In the hospital's view, the court improperly enforced the subpoena issued by the claims commissioner because the commissioner had no express statutory authority to order the discovery of the requested documents. The hospital contends that (1) the documents are irrelevant and privileged, and (2) the commissioner's statutory subpoena power does not extend to documents in the possession of an entity or individual that is not a party to a claim pending before the commissioner.

Resolution of this appeal requires us to interpret chapter 53 of the General Statutes, §§ 4-141 through 4-165 (claims commission act),[9] which establishes and

---

[8] In the trial court, the hospital also relied on General Statutes § 19a-17b, which limits the admissibility of the proceedings of a medical committee conducting a peer review in any civil action against a health care provider. That claim has not been pursued in this appeal.

[9] "[C]hapter 53 of the General Statutes, §§ 4-141 through 4-165, titled Claims Against the State, describes the responsibilities and powers of the claims commissioner. . . . [Chapter 53] expressly bars [actions] upon claims cognizable by the claims commissioner except as he may authorize, an indication of the legislative determination to preserve sovereign immunity as a defense to monetary claims against the state not sanctioned by the [claims] commissioner or other statutory provisions." (Citation omitted;

governs the authority of the claims commissioner to review claims against the state. "Because statutory interpretation is a question of law, our review is [plenary]. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 150–51, 12 A.3d 948 (2011).

Underlying the hospital's argument that the claims commissioner lacked the authority to issue the subpoena is the assumption that the powers conferred upon the claims commissioner by chapter 53 of the General Statutes are subject to the same degree of judicial scrutiny that courts exercise, pursuant to General Statutes § 4-183[10] of the Uniform Administrative Procedure Act;

internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 401, 968 A.2d 416 (2009).

[10] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . . (j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected

General Statutes § 4-166 et seq.; in their review of the decisions of other administrative agencies. We disagree with this assumption.

"The office of the claims commissioner was created by Public Acts 1959, No. 685. Prior to 1959, a claimant who sought to sue the state for monetary damages, in the absence of a statutory waiver by the state, had but one remedy—namely, to seek relief from the legislature, either in the form of a monetary award or permission to sue the state. . . . [T]he [office of the claims commissioner] was intended to ease the legislature's burden in handling claims for monetary relief." (Citation omitted.) *Miller* v. *Egan*, 265 Conn. 301, 318, 828 A.2d 549 (2003). In accordance with that agenda, § 4-160 (a)[11] confers upon the claims commissioner the discretionary authority to decide whether it is "just and equitable" to permit a claim against the state. Furthermore, in the exercise of that discretionary authority, the claims commissioner "performs a *legislative* function directly reviewable only by the General Assembly." (Emphasis added.) *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 541, 489 A.2d 363 (1985).

Although the office of the claims commissioner is, in part, an executive branch agency, because the claims commissioner is an appointee of the governor, the office of the claims commissioner differs significantly from other executive branch agencies. General Statutes § 4-164a[12] expressly *exempts* the claims commissioner from

by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. . . ."

[11] See footnote 1 of this opinion.

[12] General Statutes § 4-164a provides: "The Claims Commissioner is exempt from the provisions of sections 4-176e to 4-183, inclusive."

certain provisions of the Uniform Administrative Procedure Act, including § 4-183.[13] The strict scrutiny of an administrative decision that is authorized by § 4-183 and undertaken in *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 10–11, 675 A.2d 845 (1996), on which the hospital relies, is, therefore, *not* the appropriate standard of judicial review for an appeal from an order of the claims commissioner.

The validity of the claims commissioner's exercise of his discretionary authority must be determined by reference to the unique terms of the claims commission act, chapter 53 of the General Statutes. To the extent that these statutes are ambiguous, they must be interpreted to reflect the claims commissioner's singular responsibility to exercise a *legislative* function. *McCoy* v. *Commissioner of Public Safety*, supra, 300 Conn. 150–51. The underlying issue is, therefore, whether the legislature itself, if it had continued to exercise its own broad discretion to decide whether to authorize the Charette case against the state, would have had the authority to issue the subpoena.

A

The hospital's principal contention is that § 4-151 does not confer statutory authority on the claims commissioner to order the discovery of documents from an entity that is not a party to a claim pending before the claims commissioner. We disagree.

The state's application for a judicial order compelling the hospital to comply with the claims commissioner's subpoena relied on § 4-151. Section 4-151 provides in relevant part: "(b) The Claims Commissioner may call witnesses, examine and cross-examine any witness, require information not offered by the claimant or the Attorney General and stipulate matters to be argued.

---

[13] See footnote 10 of this opinion.

The Claims Commissioner shall not be bound by any law or rule of evidence, except as he may provide by his rules. (c) The Claims Commissioner may administer oaths, cause depositions to be taken, issue subpoenas and order inspection and disclosure of books, papers, records and documents. Upon good cause shown any such order or subpoena may be quashed by the Claims Commissioner. . . . (e) If any person refuses to testify or to produce any relevant, unprivileged book, paper, record or document, the Claims Commissioner shall certify such fact to the Attorney General, who shall apply to the superior court for the judicial district in which such person resides for an order compelling compliance. . . ."

Despite the sweeping powers that the text of this statute confers upon the claims commissioner, the hospital maintains that § 4-151 must be construed, by implication, to deny the commissioner the authority to subpoena hospital documents because the hospital has not been named as party to the Charette case. The hospital argues that the claims commissioner's investigatory authority inherently is limited by the contents of the pleadings of the claim against the state that the commissioner is being asked to authorize. Furthermore, the hospital maintains that, in this case, the claims commissioner had no authority to inquire into the merits of the state's contention that state marshals could not have foreseen that someone at the hospital would give the decedent a fatal dose of methadone. We are not persuaded.

At the outset, we agree with the court that, as a public official carrying out his official duties, the claims commissioner was entitled to a presumption that he was performing his duties properly and was not engaged in an improper act beyond his authority. See *Manatuck Associates* v. *Conservation Commission*, 28 Conn. App. 780, 793, 614 A.2d 449 (1992). Furthermore, we are

persuaded that the hospital's contention is not supported by the text of the claims commission act.

The claims commissioner's investigatory authority is defined broadly by § 4-160 (a) as a responsibility to exercise discretion to do what is "just and equitable . . . ." See *Reilly* v. *Smith*, 84 Conn. App. 849, 854–56, 855 A.2d 1000, cert. denied, 271 Conn. 938, 861 A.2d 513 (2004). Consistent with that broad authority, the relevant subsections of § 4-151 expressly authorize the claims commissioner to issue a subpoena; General Statutes § 4-151 (c); and to apply for a court order to enforce a subpoena against "any person"; General Statutes § 4-151 (e); and to "require information not offered by the claimant or the Attorney General . . . ." General Statutes § 4-151 (b). We agree with the court that we should not engraft onto this statute limitations that its text does not contain. *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 729, 6 A.3d 763 (2010) ("[courts] are not permitted to supply statutory language that the legislature may have chosen to omit" [internal quotation marks omitted]).

## B

In addition to its generic objection to the claims commissioner's subpoena, the hospital also disputes the relevance of particular documentation that the court ordered it to produce. In the hospital's view, documents regarding its licensing, procedures and personnel qualifications, which the subpoenas required it to produce, have no bearing on what the judicial marshals knew when they entrusted a hospital staff member with custodial responsibility for the decedent's well-being.[14] We are not persuaded.

We agree with the court's observation that "relevance is a very broad concept." Pursuant to Practice Book

[14] The hospital also objects to the subpoenas as being excessively burdensome. It has not, however, documented, or estimated, the cost of compliance.

§ 13-2, during pretrial discovery, "relevance" includes whatever "appears reasonably calculated to lead to the discovery of admissible evidence. . . ."[15]

It bears emphasis, moreover, that relevance, for the purpose of an inquiry into the authority of the claims commissioner, must be determined by inquiring into what would have been relevant in a *legislative* assessment of the propriety of permitting the Charette case against the state to go forward. We know of no authority, and the hospital has cited none, that would establish that a committee of the General Assembly would have lacked the authority to conduct an inquiry into the hospital's role in the decedent's untimely death. Furthermore, in such a legislative hearing, it is unlikely that it would have been dispositive, as the hospital now contends, that the commissioner initially ordered the subpoenaed documents to be delivered to the office of the attorney general, rather than to the designated legislative committee.[16]

The hospital's allegation that the claims commissioner had no authority to issue the subpoena in question because the commissioner never adopted

---

[15] For the more circumscribed process involved in an administrative appeal, Practice Book § 13-2 provides in relevant part: "[W]here the judicial authority finds it reasonably probable that evidence outside the record will be required, a party may obtain in accordance with the provisions of this chapter discovery of information . . . or documents material to the subject matter involved in the pending action, which are not privileged . . . . Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure. It shall not be ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. . . ."

[16] The hospital further maintains that the subpoena issued by the claims commissioner was fatally defective because the commissioner failed to comply with § 4-151 (e) by failing expressly to certify to the attorney general that the subpoenaed documents are "relevant [and] unprivileged." We need not address the merits of this contention because it was not addressed

regulations to establish guidelines for discovery prior to a commission hearing founders for the same reason.[17] The hospital has cited no authority for the proposition that a *legislative* inquiry into whether to grant a claimant permission to sue the state could not proceed without compliance with the formalities that executive branch agencies generally are expected to follow. The hospital's conclusory contention fails to take account of the *legislative* power that the General Assembly has conferred upon the claims commissioner.

Finally, the hospital contends that the court's order improperly granted the claims commissioner greater authority than a court, and that the legislature could not have intended to confer greater authority upon the claims commissioner than it has afforded to the judges of the Superior Court. This contention once again fails to take into account the claims commissioner's special role as a surrogate for the legislature. Moreover, it overlooks the fact that, even for administrative agencies governed by the Uniform Administrative Procedure Act, some administrative rulings, such as those that do not qualify as final agency decisions in a contested case, are not subject to Superior Court review. See *Ferguson Mechanical Co.* v. *Dept. of Public Works*, 282 Conn. 764, 771–72, 924 A.2d 846 (2007).

## II

## CONSTITUTIONAL CLAIMS

The hospital's appeal also challenges the constitutionality of the legislature's unconditional delegation to

---

either in the court's memorandum of decision or in the hospital's motion for reargument.

[17] In its reply brief, the hospital also argues that the regulations promulgated by the claims commissioner do not authorize the issuance of prehearing subpoenas. We need not consider the merits of this claim, which the court did not address. *State* v. *Beliveau*, 52 Conn. App. 475, 479, 727 A.2d 737, cert. denied, 249 Conn. 920, 733 A.2d 235 (1999).

the claims commissioner of its authority to waive the state's sovereign immunity from suit. This claim has two parts. The hospital maintains that the authority that the legislature conferred upon the claims commissioner (1) is too broadly stated to pass constitutional muster and (2) violates the constitutional principle of bicameralism. The court rejected both constitutional challenges. We agree with the court.

As the court observed, the legislature, before enacting the claims commission act, recognized that it might lack constitutional authority to delegate the waiver of the state's sovereign immunity to some other entity. The legislature therefore prepared a constitutional amendment to article tenth of our state constitution, which provides: "Article tenth of the constitution is amended by adding section 7 as follows: Claims against the state shall be resolved in such manner as may be provided by law."[18] The electorate approved the amendment in 1958. Conn. Joint Standing Committee Hearings, Appropriations, Pt. 3, 1959 Sess., p. 920. In light of this constitutional amendment, the court held that the hospital's constitutional arguments lacked merit.

We find the court's constitutional analysis compelling. Without some reasoned argument as to why the constitutional amendment is not dispositive, which the hospital has not presented to us, we conclude that the hospital cannot prevail on its constitutional claims.

In sum, the authority that the legislature expressly has conferred upon the office of the claims commissioner is far-reaching. By authorizing the claims commissioner to decide whether a suit against the state is "just and equitable"; General Statutes § 4-160 (a); the legislature has conferred upon him the same broad discretion that the legislature itself exercised before the

---

[18] This provision is now codified in article eleven of the constitution of Connecticut.

enactment of the claims commission act. Because the legislature's delegation of its equitable authority to the claims commissioner is unambiguous and unequivocal, we conclude that the court properly enforced the subpoena issued by the claims commissioner in this case.

The judgment is affirmed.

In this opinion the other judges concurred.