******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# VISTRA CORP. ET AL. *v.* PUBLIC UTILITIES REGULATORY AUTHORITY
## (SC 21120)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Pursuant to statute (§§ 16-243q (a) and 16-245a (a)), electric suppliers licensed in Connecticut must satisfy the state's renewable portfolio standards (RPS) by demonstrating that a certain percentage of the electricity that they supply to customers has been generated by certain classes of renewable energy sources.

Pursuant further to statute (§ 16-245 (k)), the Public Utilities Regulatory Authority (PURA) "shall annually conduct an uncontested proceeding to determine whether any licensee has failed to comply with [the state's RPS] during the preceding year" and "shall require [an alternative compliance] payment by a licensee" in the event of noncompliance.

In 2022, the plaintiff electric suppliers entered into a settlement agreement to resolve an investigation conducted by the defendant PURA into the plaintiffs' compliance with certain regulatory requirements. Pursuant to that agreement, the plaintiffs agreed to voluntarily withdraw from the Connecticut electric supplier market and to make certain payments in order to resolve any actual or potential claims against them. The agreement also provided that the plaintiffs would be obligated "to pay the full amount owed" for their 2022 RPS obligations if PURA ultimately determined that the amounts they had paid pursuant to the agreement, using the calculations contemplated therein, "did not meet their full obligations." PURA ultimately approved the agreement. The plaintiffs then filed in their respective licensing dockets documentation of their compliance with the 2022 RPS, as required by the agreement, and PURA confirmed that the plaintiffs had satisfied their 2022 RPS obligations. Thereafter, in 2023, PURA initiated a new docket to conduct its annual review of licensees' compliance with the 2022 RPS, as required by § 16-245 (k). The plaintiffs resubmitted their 2022 RPS compliance reports in the RPS docket, as directed by PURA. PURA, however, then notified the plaintiffs that the payments they made pursuant to the agreement did not satisfy their 2022 RPS obligations because certain calculations in the RPS docket differed from those in the plaintiffs' 2022 RPS compliance reports. Rather than refiling their compliance reports, the plaintiffs filed with PURA, pursuant to statute (§ 4-176 (a)), a petition for a declaratory ruling that they had satisfied their 2022 RPS obligations through their filings in their respective licensing dockets and that no further payments or filings were required under the agreement. PURA declined to issue the declaratory ruling, reasoning that it would be "premature" to do so when the issue of the plaintiffs' compliance with the 2022 RPS was already under consideration in the RPS docket. PURA subsequently issued a decision in the RPS docket, rejecting the plaintiffs' contention that PURA had determined that they had satisfied their 2022 RPS obligations and finding that they had failed to satisfy

those obligations and owed more than $1 million in alternative compliance payments. The plaintiff then filed a complaint in the trial court. In the first count of the complaint, the plaintiffs sought to appeal from PURA's RPS decision under the provision (§ 4-183 (a)) of the Uniform Administrative Procedure Act allowing appeals from final agency decisions. In the second count, the plaintiffs sought, pursuant to statute (§ 4-175 (a)), a judgment declaring that they had satisfied their 2022 RPS obligations and that no further payments were required. The trial court, however, dismissed the plaintiffs' administrative appeal on the ground that the RPS decision was not an appealable "final decision" for purposes of § 4-183 (a). The trial court also dismissed the count of the plaintiffs' complaint seeking a declaratory judgment on the ground that the plaintiffs had failed to exhaust their administrative remedies. On appeal before this court, the plaintiffs claimed that the trial court had improperly dismissed their administrative appeal and their claim for a declaratory judgment. *Held*:

The trial court properly dismissed the plaintiffs' administrative appeal for lack of subject matter jurisdiction, as the plaintiffs had no right to judicial review of PURA's RPS decision under § 4-183 (a).

Section 4-183 (a) allows appeals only from the final decision of an agency, and PURA's RPS decision was not a "final decision" withing the meaning of the statute (§ 4-166 (5) (A)) defining that term as an "agency determination in a contested case," as PURA had conducted the 2022 RPS proceeding as an uncontested proceeding in accordance with the legislature's express mandate in § 16-245 (k).

Moreover, the RPS proceeding did not qualify as a "contested case" under § 4-166 (4), as the plaintiffs failed to identify any state statute or regulation that required PURA to determine their legal rights, duties or privileges after an opportunity for a hearing.

The trial court improperly dismissed the count of the plaintiffs' complaint seeking a declaratory judgment on the ground that the plaintiffs had failed to exhaust their administrative remedies, and, accordingly, this court reversed in part the trial court's judgment and remanded the case for further proceedings on that claim for relief.

The plaintiffs did exhaust their administrative remedies insofar as they sought a ruling from PURA, pursuant to § 4-176 (a), declaring that they had satisfied their 2022 RPS obligations and that no more filings were necessary, and, when PURA expressly declined to issue that ruling because the same issue was being considered in the pending RPS proceeding, the plaintiffs participated in the RPS proceeding and advanced the same claims concerning the satisfaction of their 2022 RPS obligations.

Contrary to the trial court's conclusion, the filing of a petition for a declaratory ruling with an agency pursuant to § 4-176 (a) is a part of, rather than an attempt to circumvent, the administrative process.

Furthermore, no administrative proceeding remained pending when the plaintiffs filed their claim for a declaratory judgment in the trial court, and PURA completed its statutory task under § 16-245 (k) of determining licensees' RPS obligations before the plaintiffs sought judicial relief.

It was only after PURA issued its decision in the 2022 RPS proceeding, in which PURA expressly rejected the plaintiffs' interpretation of the settlement agreement and found that they had not satisfied their 2022 RPS obligations, that the plaintiffs sought a declaratory judgment in the trial court pursuant to § 4-175 (a), and, at that point, there was no longer any possibility that the plaintiffs would be successful in vindicating their claimed contractual rights through the administrative process.

PURA could not prevail on its alternative ground for affirming the trial court's dismissal of the plaintiffs' claim for a declaratory judgment, namely, that the trial court lacked jurisdiction to render a declaratory judgment under § 4-175 (a) because the settlement agreement that the plaintiffs sought to have interpreted was not a statute, regulation, or a final decision.

Sections 4-175 and 4-176 allow a regulated entity to obtain regulatory, and subsequently judicial, guidance with respect to the application of only a statute, regulation, or a final decision that threatens to interfere with or impair the entity's legal rights or privileges.

The plaintiffs' request for declaratory relief, reasonably construed, fell within the purview of §§ 4-175 and 4-176, and, accordingly, the trial court had jurisdiction to render a declaratory judgment.

Specifically, the plaintiffs, in filing with PURA a petition for a declaratory ruling pursuant to § 4-176 (a), and in filing with the trial court a claim for a declaratory judgment pursuant to § 4-175 (a), sought a ruling as to the applicability of §§ 16-245 (k) and 16-245a to a specified circumstance, namely, the dispute between the plaintiffs and PURA regarding the interpretation of the parties' settlement agreement, and the resolution of that dispute involved PURA's application of §§ 16-245 (k) and 16-245a.

**(***Two justices concurring in part and dissenting
in part in one opinion***)**

Argued December 11, 2025—officially released May 26, 2026

*Procedural History*

Appeal, in the first count, from the decision of the defendant requiring the plaintiffs to make certain alternative compliance payments pursuant to this state's renewable energy portfolio standards, and action, in the second count, for a declaratory judgment, brought to the Superior Court in the judicial district of New Britain, where the court, *Budzik, J.*, granted the motion to

intervene filed by the Office of Consumer Counsel; thereafter, the court, *Budzik, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed. *Reversed in part*; *further proceedings*.

*Erick M. Sandler*, with whom were *Alexander W. Judd* and, on the brief, *Johanna S. Lerner*, for the appellants (plaintiffs).

*Evan O'Roark*, deputy solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant).

*Andrew W. Minikowski*, with whom, on the brief, were *Claire E. Coleman*, consumer counsel, and *Thomas H. Wiehl*, for the appellee (intervenor Office of Consumer Counsel).

*Opinion*

BRIGHT, J. The plaintiffs, Vistra Corp. and its wholly owned subsidiaries,[1] appeal from the judgment of the trial court dismissing their administrative appeal and declaratory judgment action, in which they sought judicial review of the decision of the defendant, the Public Utilities Regulatory Authority (PURA), which found that the plaintiffs owe more than $1 million pursuant to Connecticut's renewable portfolio standards (RPS). On appeal,[2] the plaintiffs claim that the trial court incorrectly concluded that they (1) had no right to take an administrative appeal from PURA's decision under General Statutes § 4-183 (a), and (2) failed to exhaust their administrative remedies before seeking declaratory relief pursuant to General Statutes §§ 4-175 and 4-176. PURA disagrees and also claims, as an alternative ground for affirming the judgment, that the trial court

---

[1] The wholly owned subsidiaries are Public Power, LLC, Viridian Energy, LLC, Connecticut Gas & Electric, LLC, Ambit Northeast, LLC, and Everyday Energy, LLC, doing business as Energy Rewards.

[2] The plaintiffs appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

lacked jurisdiction under §4-175 because the plaintiffs' did not seek a ruling from PURA as to the applicability of a statute, regulation or final decision within PURA's jurisdiction, as required under both §§4-175 and 4-176.[3] We agree with the plaintiffs' second claim as to declaratory relief, and we reject PURA's alternative ground for affirming the judgment. Accordingly, we reverse in part the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The plaintiffs are electric suppliers that previously were licensed by PURA to provide electric energy to customers in Connecticut. See General Statutes §16-1 (a) (24). As electric suppliers, they had to comply with Connecticut's RPS, which require that certain percentages of the electricity supplied to customers be generated by three classes of renewable energy sources.[4] See General Statutes §§16-243q (a) and 16-245a (a); see also *Direct Energy Services, LLC* v. *Public Utilities Regulatory Authority*, 347 Conn. 101, 109, 296 A.3d 795 (2023). Electric suppliers can satisfy these requirements by

[3] PURA did not distinctly raise this claim in the trial court, and it has not characterized its claim as an alternative ground for affirming the judgment on appeal. See Practice Book §60-5 (appellate court is not "bound to consider a claim" unless distinctly raised at trial); Practice Book §63-4 (a) (1) (A) (appellee seeking to present "alternative grounds upon which the judgment may be affirmed . . . shall file a preliminary statement of issues"). Nevertheless, we address this unpreserved, alternative ground for affirming the judgment because it implicates the subject matter jurisdiction of the trial court and because the plaintiffs had the opportunity to respond, and did so, in their reply brief. See, e.g., *Gerardi* v. *Bridgeport*, 294 Conn. 461, 466–67, 985 A.2d 328 (2010).

[4] Class I renewable energy sources include solar, wind, fuel cell, and geothermal energy; General Statutes §16-1 (a) (20) (A); class II sources include "electricity derived from a trash-to-energy facility"; General Statutes §16-1 (a) (21); and class III sources include combined heat and power systems, waste heat recovery systems, and electricity savings generated from conservation and load management programs. General Statutes §16-1 (a) (38). In 2022, an electric supplier was required to supply 24 percent of its retail load using class I renewable energy, 4 percent using class II or additional class I renewable energy sources; General Statutes §16-245a (17); and 5 percent with class III renewable energy sources. See General Statutes §16-243q (a) (4).

purchasing renewable energy credits (RECs)[5]; see General Statutes § 16-245a (b); or by making alternative compliance payments in an amount set by statute.[6] See General Statutes § 16-245 (k). Electric suppliers must file an annual report with PURA to demonstrate compliance with the prior year's RPS. See Regs., Conn. State Agencies § 16-245a-1 (a). PURA "shall annually conduct an uncontested proceeding" to verify compliance with the prior year's RPS and "shall require [an alternative compliance] payment by a licensee that fails to comply with the [RPS] . . . ." General Statutes § 16-245 (k).

After PURA, through its Office of Education, Outreach and Enforcement (EOE), began investigating the plaintiffs' compliance with various regulatory requirements, the plaintiffs entered into a settlement agreement with the EOE to resolve the investigation in July, 2022. The parties agreed that, after the plaintiffs were deemed withdrawn from the market and their licenses were relinquished,[7] the plaintiffs would have "no more

[5] "RECs are inventions of state property law whereby the renewable energy attributes are unbundled from the energy itself and sold separately. . . . Each REC represents one megawatt-hour of renewable energy produced by a third-party generator." (Citation omitted; internal quotation marks omitted.) *Direct Energy Services, LLC* v. *Public Utilities Regulatory Authority*, supra, 347 Conn. 109–110.

[6] An "alternative compliance payment" is "the payment required . . . for failure to meet the [RPS] . . . ." Regs., Conn. State Agencies § 16-245-1 (2). In 2022, the alternative compliance payment rate was four cents per kilowatt hour for class I renewable energy sources, two and one-half cents per kilowatt hour for class II renewable energy sources; General Statutes § 16-245 (k); and three and one-tenth cents per kilowatt hour for class III renewable energy sources. See General Statutes § 16-243q (b); see also Decision and Order, Public Utilities Regulatory Authority, "Annual Review of Connecticut Electric Suppliers' and Electric Distribution Companies' Compliance with Connecticut's Renewable Energy Portfolio Standards in the Year 2022," Docket No. 23-06-01 (December 20, 2023) pp. 5–6.

[7] Pursuant to the settlement agreement, Public Power, LLC, Viridian Energy, LLC, Connecticut Gas & Electric, LLC, and Everyday Energy, LLC, agreed that they would be deemed withdrawn from Connecticut's electric supplier market immediately and that their licenses would be deemed relinquished after they transitioned their existing customers to standard service. Ambit Northeast, LLC, agreed that it would be deemed

obligations before PURA other than those described in paragraph 4 of [the] [s]ettlement [a]greement (if any) . . . ."

Paragraph 4 of the settlement agreement provides in relevant part that "PURA shall return to each of the [plaintiffs] any security deposit it has on file for the [electric supplier] within ten . . . days following the latter of relinquishment of its license, satisfaction of the 2021 and 2022 annual regulatory assessment pursuant to . . . General Statutes § 16-49 . . . or satisfaction of 2021 and 2022 RPS obligations (RPS [o]bligations). . . . [N]o later than thirty . . . days after PURA's approval of this [s]ettlement [a]greement, each [plaintiff] shall make a filing in its licensing docket demonstrating 2022 RPS compliance by providing: (i) a completed copy of [e]xhibit A[8] . . . using the most [up-to-date] load data from each [plaintiff's] system based on its [New England Independent System Operator] load asset number, (ii) [s]ettled [c]ertificate reports showing renewable energy credits retired, and (iii) if applicable, a receipt showing any alternative compliance payment, as determined on [e]xhibit A, paid to the [electric distribution companies] and The Green Bank. . . . Each [plaintiff] agrees to pay the full amount owed for [a]ssessments and RPS [o]bligations if final determinations indicate the amounts paid by [them] as part of this [s]ettlement [a]greement, using the calculations contemplated in this paragraph 4, did not meet their full obligations." (Footnote added.)

On July 21, 2022, PURA approved the settlement agreement and directed the EOE to notify PURA when each of the plaintiffs had fulfilled their RPS obligations, at which point PURA would return any security deposits

voluntarily withdrawn from Connecticut's electric supplier market and that its license would be deemed relinquished on September 30, 2022.

[8] "Exhibit A encompasses each electric supplier's . . . RPS [a]nnual [r]eport requirement, including amount of load served, REC obligation for each class of energy source, REC procurement for each class, amount of [alternative compliance payment] owed for each class (where sufficient RECs were not procured), and the quantities of any banked RECs for each class."

it had on file.[9] On August 16, 2022, the plaintiffs filed in their respective licensing dockets documentation of their compliance with the 2022 RPS, and the EOE, by letter dated August 29, 2022, notified PURA that the plaintiffs had "satisfied their 2022 RPS obligations (filed in their licensing dockets) by making alternative compliance payments and submitting receipts therefor." PURA subsequently returned or canceled each of the plaintiffs' security deposits by November, 2022.

In April, 2023, in Docket No. 23-06-01 (RPS docket), PURA initiated its annual review of electric suppliers' compliance with the 2022 RPS (RPS proceeding) and notified all licensed electric suppliers that they must file their 2022 RPS compliance reports on or before October 16, 2023. The plaintiffs submitted a letter stating that PURA already had confirmed that the plaintiffs had satisfied their 2022 RPS obligations after the plaintiffs filed their 2022 RPS compliance reports in their respective licensing dockets in August, 2022. They resubmitted their 2022 RPS compliance reports in the RPS docket. In response, the EOE notified the plaintiffs that their payments under paragraph 4 of the settlement agreement failed to satisfy their 2022 RPS obligations because the load calculations provided by the electric distribution companies in the RPS docket were greater than those provided by the plaintiffs in their 2022 RPS compliance reports. The EOE directed the plaintiffs to refile their RPS compliance reports using the updated load data on or before October 23, 2023.

On October 20, 2023, the plaintiffs filed with PURA a petition for a declaratory ruling pursuant to § 4-176 (a),

---

[9] Electric suppliers are required to "maintain security in an amount that will ensure [their] financial responsibility and [their] supply of electricity to end use customers . . . ." Regs., Conn. State Agencies § 16-245-4 (a) (1). In addition to that security, electric suppliers must also maintain a RPS security with PURA that is "equal to the full alternative compliance payment that the electric supplier would be required to pay" under § 16-245 (k). Regs., Conn. State Agencies § 16-245a-1 (b) (1).

which was assigned Docket No. 23-10-28.[10] The plaintiffs requested that PURA "issue an expedited declaratory ruling" confirming that they "each satisfied any and all 2022 RPS obligations through their filings in their licensing dockets on or about August 16, 2022, and no further payments or filings are required, pursuant to the settlement agreement approved by [PURA] in each of the licensing dockets on July 21, 2022. This confirmation is needed to provide certainty regarding [the plaintiffs'] obligations under RPS requirements for 2022 given [the] EOE's [order that the plaintiffs refile their RPS compliance reports using the updated load data]." The plaintiffs asserted that they sought "a declaratory ruling as to the applicability to the [plaintiffs'] 2022 RPS obligations of [PURA's] July 21, 2022 [d]ecision approving the [s]ettlement [a]greement, specifically the language therein related to 2022 RPS compliance obligations."

On November 27, 2023, PURA issued an order declining to issue the requested declaratory ruling pursuant to § 4-176 (e) (5).[11] PURA stated that it would have been "premature" to issue the requested ruling because the plaintiffs' compliance with the 2022 RPS was already under consideration in the RPS docket. The next day, PURA filed its proposed final decision in the RPS docket. In that decision, PURA determined the 2022 RPS obligations of thirty-four electric suppliers before addressing the plaintiffs' obligations in a separate subsection titled "Final Determination for Settling Suppliers." PURA reviewed the settlement agreement and emphasized the language providing that the plaintiffs agreed "'to pay the full amount owed for . . . RPS [o]bligations *if final determinations indicate the amounts paid* by the [plain-

----

[10] General Statutes § 4-176 (a) provides in relevant part that "[a]ny person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency."

[11] General Statutes § 4-176 (e) provides in relevant part that, "[w]ithin sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall . . . (5) decide not to issue a declaratory ruling, stating the reasons for its action."

tiffs] as part of this [s]ettlement [a]greement, using the calculations contemplated in this paragraph 4, *did not meet their full obligations.*'" **(**Emphasis in original.**)** PURA then determined that the plaintiffs had failed to satisfy their 2022 RPS obligations based on the total load settlement data for 2022, and it found that they owed alternative compliance payments totaling $1,089,368.

The plaintiffs filed written exceptions to the proposed final decision in the RPS docket, repeating their contention that PURA already had determined that the plaintiffs satisfied their 2022 RPS obligations by November, 2022, in accordance with paragraph 4 of the settlement agreement. PURA subsequently issued its final decision in the 2022 RPS docket (RPS decision), in which it rejected the plaintiffs' arguments in their written exceptions. PURA noted that the plaintiffs did not dispute PURA's calculation of their RPS obligations but, rather, contended that "the estimated payments . . . [made] in August, 2022, as a condition to the release of their security deposits, was, in fact, full and final payment in satisfaction of the 2022 RPS obligations." PURA determined that the plaintiffs' "interpretation conflicts with the plain language of the settlement agreement requiring the [plaintiffs] 'to pay the full amount owed.' In addition, any unpaid RPS obligations fall on ratepayers; therefore, it would be nonsensical for an investigation into supplier conduct to result in settlement that shifts responsibility for undisputed RPS liabilities from the [plaintiffs] to ratepayers. The [plaintiffs'] interpretation would allow them to benefit from being investigated and relinquishing their licenses."

The plaintiffs filed a complaint in the Superior Court, seeking either an administrative appeal from the RPS decision under § 4-183 (a) or, in the alternative, a declaratory judgment under § 4-175 (a) based on PURA's decision not to issue a declaratory ruling pursuant to § 4-176 (e) (5). In January, 2024, the trial court granted the parties' joint stipulation that the court stay enforcement of certain of PURA's orders directed at the plaintiffs

during the pendency of the plaintiffs' administrative appeal and any further appeal therefrom.

PURA moved to dismiss the action for lack of subject matter jurisdiction under both §§ 4-175 (a) and 4-183 (a). It argued that the RPS decision, having been issued in an uncontested proceeding as required by § 16-245 (k), is not appealable pursuant to § 4-183 (a) because a "final decision" is statutorily defined as "the agency determination in a contested case . . . ." General Statutes § 4-166 (5) (A). PURA also argued that, because the plaintiffs had failed to exhaust administrative remedies in the RPS proceeding before they sought a declaratory ruling under § 4-176 (a) as to their 2022 RPS obligations, they were precluded from seeking declaratory relief pursuant to § 4-175 (a). PURA posited that "a premature declaratory ruling petition cannot serve as the basis for relief under § 4-175."

In their opposition to the motion to dismiss, the plaintiffs contended that PURA's interpretation of the settlement agreement exceeded "the routine RPS determination that the legislature provided was to be handled in an uncontested case" and, therefore, that "the substance of the [RPS] decision . . . makes it a final decision" for purposes of § 4-183 (a). (Emphasis omitted.) They also argued, among other things, that they had exhausted their administrative remedies because there is no requirement that they await a decision in an uncontested proceeding before filing a petition for a declaratory ruling with an agency.

After a hearing, the trial court granted the motion to dismiss, concluding that PURA's RPS decision was not a "final decision" for purposes of § 4-183 (a). The court further concluded that, because the plaintiffs filed their petition for a declaratory ruling with PURA while the RPS proceeding was pending, the exhaustion doctrine precluded the plaintiffs from pursuing a declaratory judgment under § 4-175 (a). This appeal followed.[12]

[12] The Office of Consumer Counsel (OCC) filed a motion to intervene in the administrative appeal, which the trial court granted. The OCC

I

The plaintiffs first claim that the trial court incorrectly concluded that they had no right to appeal from PURA's RPS decision because it was not a "final decision" within the meaning of §§ 4-166 (5) and 4-183 (a). The plaintiffs acknowledge that § 16-245 (k) mandates that PURA conduct its annual RPS compliance review as an uncontested proceeding but contend that this designation does not end the inquiry into contested case status. They argue that "the substance of the . . . RPS decision with respect to the [plaintiffs] makes it a final decision . . . . Any decision reopening the settlement agreement for interpretation must be made in a contested case and constitutes a final decision as it would implicate the legal rights at stake in the [plaintiffs'] licensing decisions," meaning that it "cannot be addressed solely in an uncontested proceeding." We are not persuaded.

"Appeals to the courts from administrative [agencies] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed." (Internal quotation marks omitted.) *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, 347 Conn. 317, 328, 297 A.3d 531 (2023). "Deciding which class of cases qualifies for contested case status reflects an important matter of public policy and the primary responsibility for formulating public policy must remain with the legislature." (Internal quotation marks omitted.) Id., 328–29. Whether the plaintiffs have a statutory right to appeal under the Uniform Administrative Procedure Act (UAPA) is a question of statutory interpretation over which our review is plenary. See, e.g., *Middlebury* v. *Dept. of Environmental Protection*, 283 Conn. 156, 166, 927 A.2d 793 (2007). In this regard, we are guided by the well established principles set forth in General Statutes § 1-2z and our prior precedent construing the relevant statutory provisions.

participated in the present appeal by filing a brief in support of the trial court's judgment and appearing for oral argument before this court.

Section 4-183 (a) provides in relevant part that "[a] person who has exhausted all administrative remedies available . . . and who is aggrieved by a final decision may appeal to the Superior Court . . . ." A "final decision" is defined in § 4-166 (5) (A) as "the agency determination in a contested case," and a "contested case" is defined as "a proceeding . . . in which the legal rights, duties or privileges of a party are required by state statute or regulation to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ." General Statutes § 4-166 (4); see also *Ferguson Mechanical Co.* v. *Dept. of Public Works*, 282 Conn. 764, 771–72, 924 A.2d 846 (2007).

The legislature expressly mandated in § 16-245 (k) that PURA conduct its annual RPS compliance review as an uncontested proceeding, thereby excluding such proceedings from the class of contested cases. That clear legislative designation obviates the need for this court to consider additional criteria relevant under § 4-166 (4) to determining contested case status. See, e.g., *Ferguson Mechanical Co.* v. *Dept. of Public Works*, supra, 282 Conn. 777 n.13 ("in [some] areas of our statutory scheme, the legislature has expressly stated that an agency decision does *not* constitute a basis for appeal under the UAPA" (emphasis in original)); *Missionary Society of Connecticut* v. *Board of Pardons & Paroles*, 272 Conn. 647, 652, 866 A.2d 538 (2005) (if administrative proceedings before agency are expressly excluded from class of contested cases, "decisions in such proceedings are not 'final decisions' for purposes of § 4-183 (a)"). Because the RPS proceeding was conducted as an uncontested proceeding pursuant to § 16-245 (k), PURA's RPS decision is not a final decision in a contested case. The plaintiffs therefore have no right to appeal from PURA's RPS decision under § 4-183 (a) because they are not aggrieved by a final decision in a contested case.

The plaintiffs' arguments to the contrary are unavailing. Even if we ignored the statutory classification of RPS proceedings as uncontested cases and considered the criteria for contested case status, the RPS proceeding is

not a contested case under §4-166 (4). Although the plaintiffs insist that the RPS decision "must be appealable because PURA adjudicated [their] legal rights, duties and privileges," they fail to identify any state statute or regulation that *required* PURA to determine those rights, duties and privileges after an opportunity for a hearing.[13] In the absence of a state statute or regulation requiring PURA to decide the RPS issues through an opportunity for a hearing, the RPS proceeding is not a contested case. See, e.g., *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 802, 629 A.2d 367 (1993) ("[i]f the plaintiff's rights or privileges were not statutorily required to be determined by the agency in a hearing or after an opportunity for a hearing, a 'contested case' would not exist and the plaintiff would have no right to appeal pursuant to §4-183 (a)"). Consequently, the trial court properly dismissed the plaintiffs' administrative appeal for lack of subject matter jurisdiction.

II

The plaintiffs also claim that the trial court improperly dismissed the count of their complaint seeking a declaratory judgment on the ground that they failed to exhaust their administrative remedies. We agree.

Before considering the parties' arguments, we set forth the applicable standard of review and relevant principles regarding the exhaustion doctrine and §§4-175 and 4-176. "[A] trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed. . . . [E]xhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative

---

[13] The plaintiffs refer to PURA's statutory duties regarding licensing of electric suppliers under §16-245, but they do not contend that §16-245 requires that PURA hold a hearing to determine their contractual rights under the settlement agreement or their 2022 RPS obligations.

appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities." (Citation omitted; internal quotation marks omitted.) *Commonwealth Servicing Group, LLC* v. *Dept. of Banking*, 351 Conn. 701, 712–13, 332 A.3d 920 (2025). A determination regarding a trial court's subject matter jurisdiction is an issue of law subject to our plenary review. See, e.*g.*, id., 713.

Under § 4-176 (a), "[a]ny person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency." If the agency elects not to issue a declaratory ruling under § 4-176 (e) (5), "the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances." General Statutes § 4-175 (a).

Sections 4-175 and 4-176 allow regulated entities "to obtain regulatory, and subsequently judicial, guidance with respect to [the application of] a statute, regulation, or final decision . . . [that] threatens to interfere with or impair . . . [the entity's] legal rights or privileges . . . ." (Internal quotation marks omitted.) *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 214, 105 A.3d 210 (2014). The only express exhaustion requirement in the language of § 4-175 (a) is that a person must "petition the agency for a declaratory ruling under § 4-176 (a) . . . and wait the appropriate length of time under § 4-176 (e) or (i) for the agency either to act or not to act on the request for a declaratory ruling." Id., 210–11. When agency proceedings concerning the same conduct that underlies the petition for declaratory relief already have commenced, however, we have concluded that "§§ 4-175 and 4-176 may not be used to bypass a party's obligation to exhaust its remedies in the context of [the] pending administrative proceeding." Id.,

216. Accordingly, a party cannot bring a declaratory judgment action under §4-175 if (1) there is a pending administrative proceeding concerning the same conduct that forms the basis for the declaratory relief, and (2) that pending proceeding affords the party an adequate administrative remedy. See id.

We reasoned that this additional exhaustion requirement was implicit in the statutory scheme because a pending "administrative proceeding affords its subject numerous potential remedies," including a favorable agency decision that would render moot any court case concerning the same issue or an administrative appeal under §4-183 (a) from an adverse, final decision. Id., 214. We noted that "a primary purpose of the [exhaustion] doctrine is to foster an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. . . . Moreover, the exhaustion doctrine recognizes . . . that agencies, not the courts, ought to have primary responsibility for the programs that [the legislature] has charged them to administer. . . . Most important, a favorable outcome will render review by the court unnecessary [because] . . . [a] complaining party may be successful in vindicating his rights in the administrative process." (Citation omitted; internal quotation marks omitted.) Id., 212–13. Thus, the exhaustion doctrine is focused on ensuring that an agency has had an opportunity to address the issue before it prior to the courts becoming involved.

In the present case, the trial court concluded that the plaintiffs had failed to exhaust their administrative remedies because the RPS proceeding was pending when the plaintiffs filed their declaratory ruling petition with PURA under §4-176 (a). The court reasoned that the RPS proceeding "plainly concerned the same issue (the amount, if any, of the plaintiffs' RPS [obligations]) that the plaintiffs [sought] to have determined as part of their

petition for a declaratory ruling. . . . [T]he plaintiffs' attempt at judicial circumvention of the administrative process contravenes the principles of the exhaustion doctrine, and . . . therefore, this case must be dismissed."

On appeal, the plaintiffs argue that the trial court misapplied this court's decision in *Financial Consulting, LLC* v. *Commissioner of Ins.*, supra, 315 Conn. 196, because the RPS proceeding (1) "was not conducted as a contested case with a right to an [administrative] appeal," and (2) "did not concern the same conduct at issue in [the plaintiffs'] request for declaratory relief." PURA responds that (1) the prudential principle of fostering an orderly administrative process "applies with equal force in contested and uncontested cases alike," and (2) the RPS proceeding concerned the same conduct that gave rise to the plaintiffs' petition for a declaratory ruling.

We do not address the parties' specific arguments because we conclude that the trial court erred for a more fundamental reason—no administrative proceeding remained pending when the plaintiffs filed the underlying action in the Superior Court pursuant to § 4-175 (a). See, e.g., *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 310 Conn. 797, 810, 82 A.3d 602 (2014) ("an aggrieved party must exhaust its administrative remedies *before it may seek judicial relief*" (emphasis altered)).

In the present case, the trial court characterized the plaintiffs' filing of a petition for a declaratory ruling under § 4-176 (a) as an attempt to circumvent the administrative process because the RPS proceeding was still pending at the time the plaintiffs filed their petition for a declaratory ruling. The filing of a declaratory ruling petition with an agency, however, does not circumvent the administrative process; rather, it is part of the administrative process, and the plaintiffs' effort to obtain a declaratory ruling in this matter fulfilled their obligation to exhaust administrative remedies before bringing an action in the Superior Court. See, e.g., *Republican Party of Connecticut* v. *Merrill,* 307 Conn. 470, 478, 55

A.3d 251 (2012) ("[t]his court repeatedly has held that when a plaintiff can obtain relief from an administrative agency by requesting a declaratory ruling pursuant to §4-176, the failure to exhaust that remedy deprives the trial court of subject matter jurisdiction over an action challenging the legality of the agency's action"); *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 558, 630 A.2d 1304 (1993) (because plaintiff could have appealed under §4-183 from adverse declaratory ruling by agency concerning its authority over plaintiff, plaintiff was required to seek such declaratory ruling before seeking judicial relief).

The plaintiffs sought a declaratory ruling from PURA to establish that they already had satisfied their 2022 RPS obligations pursuant to the settlement agreement such that "no further payments or filings [were] required . . . ." PURA expressly declined to issue a declaratory ruling pursuant to §4-176 (e)(5) because of the pending RPS proceeding, but it then decided the issue raised in the plaintiffs' §4-176 petition in its proposed final decision in the RPS proceeding. The plaintiffs participated in that uncontested proceeding and advanced the same arguments raised in their petition for a declaratory ruling that they raised in their written exceptions to PURA's proposed final decision. Only after PURA issued the final decision in the RPS proceeding, in which it expressly rejected the plaintiffs' interpretation of the settlement agreement, did the plaintiffs seek judicial relief under §4-175 (a). Under these circumstances, the plaintiffs exhausted their administrative remedies by seeking a declaratory ruling under §4-176 (a) and by seeking to vindicate their claimed contractual rights in the RPS proceeding. After that proceeding had concluded, there was no longer any possibility that the plaintiffs would be successful in vindicating their claimed contractual rights through the administrative process.

Notably, PURA does not claim that the plaintiffs were required to renew their petition for a declaratory ruling before seeking judicial relief under §4-175 (a), likely

because it argues that it lacked jurisdiction to issue the requested ruling in the first instance. See part III of this opinion. In fact, PURA fails to identify any available administrative remedy that the plaintiffs failed to exhaust.[14] Instead, PURA argues that "[t]he prudential concerns underlying the exhaustion doctrine are particularly acute here because the plaintiffs' request for declaratory relief effectively asked PURA to divert resources from a statutorily required and time sensitive task." According to PURA, the filing of a petition for a declaratory ruling during an uncontested proceeding is improper because, "[i]f parties could avoid uncontested cases by seeking declaratory relief, that would undermine the integrity of the agency's role in administering its statutory responsibilities and the [legislature's] intent to deny judicial review in uncontested cases." (Internal quotation marks omitted.) PURA essentially argues that, because the annual RPS compliance review "shall . . . [be] conduct[ed] [as] an uncontested proceeding" under § 16-245 (k), the plaintiffs are precluded from seeking judicial relief pursuant to §§ 4-175 and 4-176. We are not persuaded.

[14] In its appellate brief, the OCC suggests that the plaintiffs should have refiled their declaratory ruling petition with PURA after PURA had issued the RPS decision. Because PURA fully disposed of the issue raised in the plaintiffs' declaratory ruling petition in the RPS decision without any indication that it would reconsider the issue if the plaintiffs renewed their declaratory ruling petition, we reject the OCC's suggestion.

During oral argument before this court, counsel for the OCC also asserted that the plaintiffs could have refused to make the ordered alternative compliance payments and awaited a notice of violation for failure to pay under General Statutes § 16-41, which would be a contested case subject to an administrative appeal under § 4-183 (a). We decline to impose an additional exhaustion requirement on parties seeking to pursue declaratory relief under §§ 4-175 and 4-176. Requiring regulated entities to disobey an agency's order and risk sanctions or penalties before allowing them to pursue declaratory relief would not further the purposes of the exhaustion doctrine. See, e.g., *Financial Consulting, LLC* v. *Commissioner of Ins.*, supra, 315 Conn. 213 ("exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities" (internal quotation marks omitted)).

The fact that the RPS proceeding was an uncontested case has no bearing on the availability of a declaratory ruling under §4-176. Section 4-176 (h) expressly provides in relevant part that "[a] declaratory ruling . . . shall have the same status and binding effect as an order issued in a contested case and shall be a final decision for purposes of appeal in accordance with the provisions of section 4-183. . . ." In addition, "a declaratory ruling issued by an agency pursuant to section 4-176" is a "final decision" under §4-166 (5) (B). We previously reviewed the history of this statutory scheme and concluded that the legislature intended "to continue allowing for judicial review of all declaratory rulings by the various state agencies, *in both contested and noncontested cases*, by including declaratory rulings among the list of final decisions that may be appealed to the Superior Court pursuant to §4-183." (Emphasis added.) *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 323–24, 968 A.2d 396 (2009); see also *Hill* v. *State Employees Retirement Commission*, 83 Conn. App. 599, 605, 851 A.2d 320 ("the trial court had jurisdiction to entertain the appeal because a declaratory ruling is appealable [regardless of] whether . . . it arises in a contested case"), cert. denied, 271 Conn. 909, 859 A.2d 561 (2004). Thus, contested case status is not the sole means of obtaining judicial review under the UAPA. See, e.g., *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 811 n.18 (although plaintiff could not appeal from agency decision in uncontested proceeding under §4-183, it could "still petition the [agency] for a declaratory ruling pursuant to . . . §4-176" as to issue decided in uncontested proceeding).

This procedure does not allow parties to "avoid uncontested cases . . . ." Although a party may seek a declaratory ruling during an ongoing administrative proceeding, the agency need not rule on it before the proceeding has concluded, and the party still must exhaust available administrative remedies in that ongoing proceeding before pursuing judicial relief under §4-175 (a). See *Financial Consulting, LLC* v. *Commissioner of Ins.*,

supra, 315 Conn. 216. This is precisely what occurred in the present case. When PURA declined to issue a declaratory ruling pursuant to §4-176 (e)(5), the plaintiffs did not seek judicial relief. Instead, they sought to vindicate their claimed contractual rights in the RPS proceeding by filing written exceptions to PURA's proposed final decision. PURA then completed the RPS proceeding before the plaintiffs sought judicial relief. The plaintiffs thus did not avoid the RPS proceeding by seeking a declaratory ruling from PURA while that proceeding remained pending. Nor does this procedure undermine PURA's "role in administering its statutory responsibilities . . . ." (Internal quotation marks omitted.) PURA completed its statutory task of determining RPS obligations before the plaintiffs sought judicial relief.

Because the plaintiffs exhausted their administrative remedies, the trial court improperly concluded that it lacked jurisdiction over their claim for a declaratory judgment.

### III

Finally, we address PURA's alternative ground for affirming the judgment of the trial court. PURA claims that, regardless of the exhaustion issue, the trial court lacked jurisdiction to render a declaratory judgment under §4-175 because "PURA only has jurisdiction to issue declaratory rulings interpreting a statute, a regulation, or a final decision. . . . None of those categories encompasses the settlement agreement the plaintiffs asked PURA to interpret here. The settlement agreement is not a statute or regulation. Nor is it a final decision within the meaning of §4-176 because it arose from an uncontested case—the investigation into the plaintiffs' alleged misconduct."[15] In their reply brief, the plaintiffs

[15] During oral argument before this court, counsel for the OCC agreed with PURA that the settlement agreement is not a final decision in a contested case. Nevertheless, the OCC argued in its appellate brief to this court that, after PURA issued the RPS decision, "[n]othing in . . . §4-176 would have prevented [the plaintiffs] from" requesting a declaratory ruling from PURA determining that "they were absolved

argue that, because the settlement agreement was filed in their licensing dockets, which involve contested case proceedings, the settlement agreement is a final decision under § 4-166 (5) (A). Although we agree with PURA that the settlement agreement is not a final decision,[16] we nonetheless conclude that the plaintiffs' request for declaratory relief, reasonably construed, falls within the purview of §§ 4-175 (a) and 4-176 (a).

"[A] subject matter jurisdictional defect may not be waived . . . [or jurisdiction] conferred by the parties, explicitly or implicitly. . . . [T]he question of subject matter jurisdiction is a question of law . . . and, once raised, either by a party or by the court itself, the question must be answered before the court may decide the case." (Internal quotation marks omitted.) *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, 319 Conn. 367, 380–81, 125 A.3d 905 (2015). Whether the plaintiffs' request for declaratory relief properly invokes the trial court's jurisdiction under

of [having] to make any further payment in satisfaction of their 2022 RPS [obligations]."

[16] In *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, 319 Conn. 367, 125 A.3d 905 (2015), PURA issued a declaratory ruling interpreting a contract between private parties; see id., 376–77; which PURA had approved in an uncontested proceeding. See id., 373. This court concluded that, because that proceeding "did not involve a contested case, a declaratory ruling or an agency decision made after reconsideration, it did not result in a 'final decision' for purposes of § 4-176 (a)." Id., 382. We therefore held that PURA lacked "statutory authority to issue a declaratory ruling applying its decision in the [uncontested] proceeding to the [parties'] dispute." Id., 382–83.

In the present case, the settlement agreement is not a "final decision" because it arose from an uncontested proceeding—an investigation under General Statutes § 16-245u, which does not require PURA to determine the plaintiffs' legal rights after an opportunity for a hearing. See part I of this opinion. The plaintiffs' argument that the settlement agreement is a final decision because it was filed in their respective licensing dockets is unavailing. The plaintiffs fail to identify a statutory or regulatory right to a hearing on the settlement agreement, and the docket in which a decision is filed does not change the nature of that decision. See *Clearview Electric, Inc.* v. *Public Utilities Regulatory Authority*, 354 Conn. 347, 358–60,    A.3d    (2026). Because the settlement agreement resolved an uncontested proceeding, it is not a final decision for purposes of §§ 4-175 and 4-176.

§ 4-175 (a) is a question of law subject to our plenary review. E.g., id., 381. "[I]n determining the nature of a pleading filed by a party, we are not bound by the label affixed to that pleading by the party." *BNY Western Trust* v. *Roman*, 295 Conn. 194, 210, 990 A.2d 853 (2010).

As previously noted, § 4-176 (a) provides in relevant part that "[a]ny person may petition an agency . . . for a declaratory ruling as to . . . the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency." If the agency declines to issue a declaratory ruling, a plaintiff may seek a declaratory judgment as to "the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances." General Statutes § 4-175 (a). "[A] complaint brought pursuant to § 4-175 must set forth facts to support an inference that a provision of the [G]eneral [S]tatutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff." (Internal quotation marks omitted.) *Financial Consulting, LLC* v. *Commissioner of Ins.*, supra, 315 Conn. 226.

The plaintiffs couched their petition for a declaratory ruling and their claim for a declaratory judgment in terms of the applicability of a final decision, i.e., the settlement agreement, to their 2022 RPS obligations.[17] The plaintiffs' characterization of their pleading does not alter its substance. See, e.g., *Republican Party of*

---

[17] In their declaratory ruling petition, the plaintiffs stated that they sought "a declaratory ruling as to the applicability to the [plaintiffs'] 2022 RPS obligations of [PURA's] July 21, 2022 decision approving the settlement agreement, specifically, the language therein related to 2022 RPS compliance obligations."

In their complaint seeking a declaratory judgment, they sought "a judicial determination that the [plaintiffs] each satisfied any and all 2022 RPS obligations through their filings in their [respective] licensing dockets on or about August 16, 2022, and [that] no further payments or filings are required pursuant to the settlement agreement approved by [PURA] in each of the [plaintiffs'] licensing dockets on July 21, 2022."

*Connecticut* v. *Merrill*, supra, 307 Conn. 485 ("the plaintiff's intention in filing the letter does not change the essential fact that, for purposes of exhaustion of administrative remedies, the letter meets all of the [agency's] substantive requirements for a request for a declaratory ruling" (emphasis omitted)); see also *BNY Western Trust* v. *Roman*, supra, 295 Conn. 210. Indeed, "[i]t is the fact of jurisdiction, not the way in which it is made to appear, which is the vital thing." (Internal quotation marks omitted.) *LaBow* v. *LaBow*, 171 Conn. 433, 442, 370 A.2d 990 (1976). Reasonably construed, both the petition and the plaintiffs' complaint seek a ruling as to the applicability of §§ 16-245 (k) and 16-245a to the specified circumstances—a dispute between the plaintiffs and PURA as to the interpretation of the settlement agreement—which falls squarely within the purview of §§ 4-175 and 4-176.

PURA appears to have viewed the petition in this way when it declined to issue the requested declaratory ruling on the ground that it was determining the same issue in the pending RPS proceeding under § 16-245 (k). In the RPS proceeding, PURA interpreted the settlement agreement, concluded that §§ 16-245 (k) and 16-245a applied, and then calculated the plaintiffs' RPS obligations in accordance with those statutes. During oral argument before this court, counsel for PURA maintained that interpretation of the settlement agreement was included within PURA's statutory directive "to determine whether any licensee has failed to comply with the renewable portfolio standards during the preceding year." General Statutes § 16-245 (k). Determining whether the plaintiffs had satisfied their RPS obligations clearly involved PURA's application of statutes within its jurisdiction.

The dissent's reliance on our decision in *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 319 Conn. 367, is misplaced. In that case, PURA approved a contract between two regulated entities in an uncontested proceeding; see

id., 373; and later issued a declaratory ruling interpreting that contract to resolve the parties' dispute as to a particular provision. See id., 376–77. On appeal to this court, the plaintiff claimed that PURA lacked jurisdiction to issue the declaratory ruling resolving the dispute under § 4-176 (a); see id., 380; and PURA claimed, among other things, that it had jurisdiction to issue the declaratory ruling "because it was applying the provisions of a statute within its jurisdiction to the circumstances of the dispute." Id., 384. We rejected PURA's asserted basis for jurisdiction, reasoning that PURA "did not rely on or even refer to" the statutory provisions on which it relied on appeal and, instead, had "relied exclusively on the plain language of the [contract], the form of which was not dictated by [statute]." Id., 384–85. We explained that PURA lacked jurisdiction because resolution of the contractual dispute "did not require [PURA] to construe or apply any specific statutory provision." Id., 386. Notably, resolution of the contractual dispute in *Kleen Energy Systems, LLC*, had no bearing on PURA's application of any statute within its jurisdiction.

Here, in contrast, resolution of the dispute as to the meaning of the settlement agreement bore directly on PURA's application of §§ 16-245 (k) and 16-245a. PURA had to determine the applicability of statutes within its jurisdiction to the specified circumstances, and the interpretation of the settlement agreement resulted in a determination whether the RPS statutes applied to the plaintiffs. Indeed, the dissent acknowledges that "the application of § 16-245 (k) depends on whether the plaintiffs discharged their RPS obligations through the settlement agreement." Thus, we are not persuaded that *Kleen Energy Systems, LLC,* supports the conclusion that PURA lacked jurisdiction to issue the requested declaratory ruling under § 4-176 (a) in the present case.[18]

In seeking a declaratory judgment "confirming that the [plaintiffs] satisfied any and all 2022 RPS obligations . . . and [that] no further payments or filings [were] required,

[18] We disagree with the dissent's view that the declaratory relief procedures under §§ 4-175 and 4-176 may be "an inapt vehicle for the

pursuant to the settlement agreement," the plaintiffs properly sought declaratory relief as to the applicability of §§ 16-245 (k) and 16-245a to their specified circumstances. The trial court therefore has jurisdiction over the plaintiffs' claim for a declaratory judgment under § 4-175 (a).

The judgment is reversed with respect to the dismissal of count two of the plaintiffs' complaint seeking a declaratory judgment and the case is remanded for further proceedings concerning that claim for relief; the judgment is affirmed in all other respects.

In this opinion McDONALD, ECKER, ALEXANDER and DANNEHY, Js., concurred.

---

plaintiffs to obtain a judicial interpretation of the settlement agreement." The dissent suggests that, because a trial court may be required to defer to PURA's interpretation of the agreement in an administrative appeal from a declaratory ruling in accordance with §§ 4-176 and 4-183, the declaratory ruling procedure would not provide much of a remedy to the plaintiffs if PURA had issued a declaratory ruling. Because PURA did not issue a declaratory ruling, the plaintiffs are seeking a declaratory judgment under § 4-175, which does not require the trial court to apply a deferential standard of review.

Moreover, even if the plaintiffs had been limited to an administrative appeal from a declaratory ruling under §§ 4-176 and 4-183, that might have been the plaintiffs' best option for judicial review of the settlement agreement for several reasons. First, if the plaintiffs are correct that the language of the settlement agreement clearly and unambiguously excluded them from future RPS proceedings under §§ 16-245 (k) and 16-245a, PURA's interpretation of the settlement agreement would be entitled to no deference. See, e.g., *Southeastern Connecticut Regional Resources Recovery Authority* v. *Dept. of Public Utility Control*, 244 Conn. 280, 290–96, 709 A.2d 549 (1998). Second, although courts afford deference to an agency's factual findings, we recently noted that there is an open question as to how much deference should be afforded to an agency's interpretation of an ambiguous contract to which it is a party. See *Connecticut Light & Power Co.* v. *Public Utilities Regulatory Authority*, 354 Conn. 579, 610–14,    A.3d

(2026). Third, and finally, PURA has consistently maintained before this court that the plaintiffs have no viable option for seeking judicial review of its interpretation of the settlement agreement, and whether the plaintiffs have *any* options outside of the administrative remedies they pursued in this case is unclear. We agree with the dissent that that question is not before us and will need to be resolved in a future case that squarely presents the issue.